# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 99-30765
## Civil Docket #97-CV-761

_____

PATRICK DIX; EVELYN VIVIAN SEARCY, personal representative
and surviving spouse and widow, substituted in place and stead
of Robert Searcy, deceased; MICHAEL RAY WILLIAMS; CARL BELAIRE,

Plaintiffs-Appellees-Cross-Appellants,

versus

TONY MANCUSO, Etc.; ET AL,

Defendants,

TONY MANCUSO, Individually and in his capacity as Ward Three
Marshal, CITY OF LAKE CHARLES,

Defendants-Appellants-Cross-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

July 2, 2001

Before KENNEDY[*], JONES, and DeMOSS, Circuit Judges.[**]

EDITH H. JONES, Circuit Judge:

In this lawsuit for politically-motivated failure to
rehire four deputy marshals of the city courts in Lake Charles,

---

[*] Circuit Judge of the Sixth Circuit, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

Louisiana, a jury rendered awards for the plaintiffs, the court imposed liability on the City as well as the marshal, and the court reduced parts of the verdict. All parties have appealed. Finding no reversible error, we affirm.

Some of the issues are easily resolved. Appellant Marshal Mancuso challenges the sufficiency of evidence of liability, the jury instructions on retaliatory failure to rehire, and appellees' attorneys' fees. Despite his protestations, the record reveals sufficient testimony – some of it from his testimony on cross-examination – from which the jury could infer that the Marshal refused to retain the four, admittedly qualified appellees because they had supported his election opponent, the previous Marshal. Circumstantial evidence of Mancuso's intent was probative. Tanner v. McCall, 625 F.2d 1183, 1192 (5th Cir. 1980). Viewing the evidence with the deference due a jury verdict, we cannot conclude that no reasonable jury could have found unconstitutional retaliation against appellees for their political activity. Mancuso's motion for judgment as a matter of law was correctly overruled. Hiltgen v. Sumrall, 47 F.3d 695, 699 (5th Cir. 1995).

The jury instruction with which Mancuso quarrels was patterned after that in the very similar case of Brady v. Fort Bend County, 145 F.3d 691 (5th Cir. 1998). In Brady, the instruction on causation of the appellees' termination was specifically approved

2

by this court. Mancuso nevertheless asserts legal error because part of the instruction might suggest that the marshal must have had, contrary to Louisiana's doctrine of at-will employment, "legitimate reasons" for refusing to retain the appellees. We disagree. The instruction principally required the jury to find that the deputies' political activities were "a substantial or motivating factor" in their terminations and that retaliation was "the real reason" for Mancuso's decision. Considered as a whole, the instruction was not substantially misleading and was fundamentally accurate. Davis v. Avondale Industries, Inc., 975 F.2d 169, 173-74 (5th Cir. 1992).

Mancuso's challenge to the award of attorneys' fees, based on the deputies' partial success at trial, is unpersuasive. Mancuso does not contest the amount claimed under an unadjusted lodestar calculation, nor does he deny that the district court considered his argument for a downward adjustment. Under the abuse of discretion standard, the district court did not err in assessing or awarding an appropriate § 1988 fee. Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 329 (5th Cir. 1995) (reviewing court should "inspect the district court's lodestar analysis only to determine if the court sufficiently considered the appropriate criteria.")

The City of Lake Charles appeals the district court's imposition of § 1983 liability on it for Marshal Mancuso's

3

unconstitutional employment decisions, contending that while he is a final policymaker in that arena, he was not a municipal policymaker for the city. Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292 (1986). We have carefully reviewed Louisiana law and cannot agree with the City's disavowal of responsibility. It is true that the office of Marshal was statutorily created by the state legislature. LSA R.S. 13:1951 and 1952. The City can neither abolish it nor interfere with the Marshal's decisions, and the City is not vicariously liable for acts of the Marshal. Cosenza v. Aetna Ins. Co., 341 So.2d 1304 (La. App. 1977). On the other hand, Louisiana law repeatedly characterizes the office of Marshal as a local rather than state office.[1] The marshal, though an independent officer, is paid and his budget approved by the City. LSA R.S. § 13:1883. Significantly, the deputy marshals' salaries are also paid by "the city of Lake Charles and the parish of Calcasieu". LSA R.S. § 2079. For all practical purposes other than their hiring and firing (which decisions all parties

---

[1] State law provides that although an office is created by the Louisiana constitution or law, it is not necessarily a "state office". LSA R.S. 42:1441.3(D). Marshals are specifically excluded from indemnification by the state for lawsuits. LSA R.S. § 13:5108.1(E)(3)(b). The office of Marshal is defined in the "City Courts" chapter of Louisiana's statutes. LSA R.S. § 13:1881 and 1881(A). Other statutes confirm that the Marshal is a local official. See, e.g., La. Const. art. 5, § 15(A); LSA R.S. § 13:1952(13) (describing city court of Lake Charles and the marshal); LSA R.S. § 11:3504 (in small cities, city marshal, among others, sits on board of trustees for police pension and relief funds); LSA R.S. § 18:551(B)(1)(e) (locating office of marshal on ballot for "municipal offices").

4

acknowledge were committed to the marshal), deputy marshals are treated as city employees.

Based on Louisiana law, the marshal must be considered a local official, not an officer of the state.  Further, in making employment decisions, he is exercising policymaking, administrative authority on the local level.  These facts differentiate the case from the Supreme Court's decision in McMillan v. Monroe County, 520 U.S. 781, 117 S.Ct. 1734 (1997), where the Court held that when acting to enforce state law, sheriffs were officers of the state. Since Mancuso's employment decisions make local policy with funds from the local budget, the city should not be startled at its liability for his constitutional violations in that capacity.

Moving to the appellees' issues, Williams, Belaire and Searcy all challenge the district court's judgment as a matter of law on their back pay awards.[2]  Williams's and Belaire's awards were reduced to the amounts testified to by their expert witness, while Searcy's award was reduced to zero because he never sought alternate employment after being terminated by Marshal Mancuso.  As noted, the standard for reversing a jury verdict is high, but not insurmountable.  Damages may not be based on speculation and conjecture alone, particularly where, as here, the value of

---

[2]     Mancuso's motion for judgment as a matter of law was not untimely under R. 50, inasmuch as he had no way of knowing before the verdict arrived that the jury would award more in damages than the plaintiffs' expert had testified to.

5

appellees' lost fringe benefits was quantifiable but wholly unquantified. Purcell v. Seguin State Bank & Trust Co., 999 F.2d 950, 960-61 (5th Cir. 1993). Unfortunately for Belaire, he offered no proof of the value of fee use of an auto, free housing, medical insurance, pension benefits, etc., and his expert Dr. Rice affixed no value to those items. While Williams testified about the existence of fringe benefits, Dr. Rice included only the value of moonlighting in his estimate of Williams's lost earnings, and the revised judgment included that sum. As for Searcy, it makes no sense for him to claim lost earnings when he voluntarily withdrew from the employment market after his termination, and the district court properly so held. In short, the jury may wander freely within the realm of the evidence when assessing damage verdicts; they may not roam at large beyond those bounds.

The last point of error is appellees' contention that the trial court abused its discretion in allowing Dr. Peterson, a vocational expert, to testify concerning the appellees' lost front pay on an inadequate methodology. Dr. Peterson's evaluation was adopted by Mancuso's economist and by the district court for its findings and judgment. While they acknowledge that the admission of expert testimony is reviewed for abuse of discretion by this court, appellees assert that the district court failed to enforce

Daubert[3] and Kumho[4] by allowing the expert's testimony despite his admission that he never interviewed the deputies, nor performed vocational tests on them, nor employed other customary procedures to evaluate their future employment opportunities. We have carefully scrutinized the record concerning Dr. Peterson's testimony and note that the district court was well aware of the need that such testimony be based on a reliable methodology. We also note that Dr. Peterson explained that he uses the same methodology as he did in this case – including a review of the deputies' employment records and history, their resumes, ages and depositions, and relevant statistical employment data – when acting as a vocational expert for the Social Security Administration. Dr. Peterson sufficiently explained why he used the methodology he employed in this case and why it is valid here. The court did not misapply governing limits on the admissibility of expert testimony.

For these reasons, we reject the contentions raised by all parties and AFFIRM the district court's judgment. The attorneys' fee award for services on appeal is REMANDED for consideration by the district court.

**AFFIRMED; FEE AWARD REMANDED.**

---

[3] Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993).

[4] Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed. 2d 238 (1999).