AS AMENDED ON DENIAL OF REHEARING AND SUGGESTION FOR REHEARING EN BANC
Before REYNALDO G. GARZA, DeMOSS and PARKER *, Circuit Judges.
*698 ROBERT M. PARKER, Circuit Judge:
Maureen Hiltgen filed this diversity wrongful death action against Douglas Leon Sumrall (“Sumrall”), The Mason & Dixon Lines (“Mason”), and D. Larry Abston (“Ab-ston”), asserting negligence and vicarious liability for an automobile accident that caused the death of her husband, Peter J. Hiltgen, on March 6, 1989. After a trial by jury, the district judge entered judgment on the verdict against all of the defendants, jointly and severally, in favor of the plaintiff on March 5, 1992.
The defendants’ post-trial motions were ultimately denied, and this appeal followed. The plaintiff filed a cross-appeal as well, which was contingent only. Since we find no merit in the defendants’ appeals, we do not address the points of error raised by the plaintiff.
FACTS
The accident from which this case arose occurred on March 6, 1989 at approximately 10:00 p.m. on Interstate 20 near Leeds, Alabama. Peter Hiltgen was killed instantly when his van slammed into the rear of a tractor-trailer rig driven by Sumrall. Sum-rall is a Mississippi resident who was employed by Abston. Abston, also á Mississippi resident, owned the tractor-trailer, which had been leased to Mason for the purpose of carrying a load of plastic pipe from Quitman, Mississippi to Woodstock, Georgia. Mason is a Delaware Corporation with its principal place of business in Tennessee, and an agent in Meridian, Mississippi.
Prior to 10:00 p.m. on March 6,1989, Sum-rall pulled the tractor-trailer into the emergency lane or shoulder on the right-hand side of 1-20 East, just outside Leeds, Alabama, near the 144 mile marker. Sumrall testified later that the purpose of this stop was to check his load and urinate. The evidence shows that when Sumrall was prepared to continue his haul to Woodstock, Georgia, he started to accelerate in the emergency lane and slowly brought the tractor-trailer back into the right-hand lane of traffic. The evidence also shows that the tractor-trailer was travelling approximately 20 — 30 miles per hour at the time of the collision.
Approximately seven miles west of the collision, Franklin Howard and Gordon Simpson, travelling in the same vehicle, had entered traffic on 1-20 right behind the van driven by Peter Hiltgen. They testified that the van was not being driven in a reckless manner when they were in a position to observe it prior to the accident. Fifteen to twenty seconds before the collision, the Hilt-gen van completed a safe pass of a vehicle driven by Britt Smith. Mr. Smith testified that the van was operating with only one headlight, but that it was being operated in a safe manner in all other respects. The evidence indicates that the Hiltgen van was travelling approximately 65 — 68 miles per hour immediately prior to the collision.
Shortly after the van passed Mr. Smith’s vehicle, Smith, Howard, and Franklin saw the rear of the van suddenly jump in the air, and then saw the van veer off into the median. All three witnesses testified that at the time of the collision they could not tell what the van had run into. In addition, all three testified that they did not see the tractor-trailer rig or its lights prior to the accident even though, in their opinion, they were in a position to have seen the tractor-trailer if it had had its lights on. The evidence also shows that Hiltgen did not take any action to avoid the collision, indicating that he did not see the tractor-trailer in time to react.
Prior to trial, the district court ruled that Alabama law would be applied to the negligence claim against Defendant Sumrall. Thus, the defendants asserted the affirmative defense of contributory negligence, which, if proven, provides a complete bar to the plaintiffs recovery under Alabama law.[1] The district court also ruled that Mississippi law would apply to the vicarious liability claim against Defendant Abston because the employment relationship between Sumrall and Abston was entered into in the State of Mississippi.
Also prior to trial, Defendant Abston moved for summary judgment, arguing that he could not be held vicariously liable for *699 Sumrall’s actions because the trip-lease and Federal Motor Carrier Safety Regulation 49 C.F.R. § 1057.12 provided that during the term of the lease, Mason was deemed to have exclusive possession, control, and use of the equipment, and in addition that there was no evidence that Abston retained sufficient control over Sumrall to render Abston hable under the doctrine of respondeat superior. The district court denied Abston’s motion, holding that a genuine issue of material fact existed with regard to Abston’s control over Sumrall.
The parties presented physical evidence, lay testimony, and expert testimony. At the close of ah the evidence, the defendants moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. The district judge denied this motion and submitted the matter to the jury by use of a special verdict form. The jury found that Sumrall had been negligent and that his negligence was a proximate cause of the collision. The jury also found that Peter Hiltgen had been negligent, but found that Hiltgen’s negligence was not a proximate cause of the collision. In addition, the jury found that Abston was liable for Sumrall’s negligence.[2] Having found against all of the defendants, the jury then awarded the plaintiff $1,500,000.00.[3] The district court entered judgment on the jury verdict.
Following judgment, the defendants renewed their motions for judgment as a matter of law under Rule 50(b), and moved alternatively for a new trial under Rule 59 of the Federal Rules of Civil Procedure. Initially, the district court decided to grant the defendants’ motion for a new trial on the grounds that the verdict was based in part on the incompetent testimony of plaintiffs expert witness. However, upon motion for reconsideration by the plaintiff, the court held that any error in admitting the testimony of the plaintiffs expert witness had been waived by the defendants when they failed to raise a contemporaneous objection. Therefore, the court withdrew its order granting the defendants’ motion for new trial. In addition, the district court was very clear that the defendants’ renewed motions for judgment as a matter of law were denied.
After the court withdrew its order granting a new trial on the bases of erroneously admitted evidence, the court considered the defendants’ motion for new trial based on the excessiveness of the jury’s punitive damages award and request for remittitur. The court held a hearing to review the propriety of the award, as required by Alabama law,[4] and held that the amount awarded by the jury was not excessive.
On appeal, the defendants make the following arguments: 1) that the evidence is not legally sufficient to support the jury verdict and thus they are entitled to judgment as a matter of law; 2) that the jury’s verdict is contrary to the great weight of the evidence and thus they are entitled to a new trial; 3) that improper jury instructions and reading of certain stipulations misled the jury and thus they are entitled to a new trial; and 4) that the jury’s punitive damages award is excessive and thus they are entitled to a new trial on the damages issue or a remittitur of the jury’s verdict. In addition, Defendant Abston argues that as a matter of law he is not vicariously liable for Sumrall’s actions.
SUFFICIENCY OF THE EVIDENCE
A motion for judgment as a matter of law (previously, motion for directed verdict or J.N.O.V.) in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury’s verdict. On review of the district court’s denial of such a motion, the appellate court uses the same standard to review the verdict that the district court used in first passing on the mo *700 tion. Bridges v. Groendyke Transp., Inc., 553 F.2d 877 (5th Cir.1977). A jury verdict must be upheld unless “there is no legally sufficient evidentiary basis for a reasonable jury to find” as the jury did. Fed.R.Civ.P. 50(a)(1).
This court has consistently applied this standard to show appropriate deference for the jury’s determination.
A jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict. On appeal we are bound to view the evidence and all reasonable inferences in the light most favorable to the jury’s determination. Even' though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses. We must not substitute for the jury’s reasonable factual inferences other inferences that we may regard as more reasonable.
Rideau v. Parkem Indus. Services, Inc., 917 F.2d 892, 897 (5th Cir.1990) (citations omitted).
The defendants address two distinct points, arguing that the evidence is insufficient to support the jury verdict. First, they contend that the evidence does not support the jury’s conclusion that Sumrall was negligent. The district court specifically rejected this contention.[5] We agree with the district court’s determination.
Specifically, the defendants argue that there was no evidence that the tractor-trailer’s lights were off at the time of the collision. However, in our opinion, the testimony of Franklin Howard, Gordon Simpson, and Britt Smith provided ample evidence to support a finding that the tractor-trailer’s lights were off, and thus that Sumrall was negligent in his operation of the rig. The defendants rely on Sumrall’s testimony that he never turned the lights off. However, the jury was free to consider Sumrall’s interest in the outcome of the litigation and his credibility generally, and we will not replace the jury’s evaluation of the weight or credibility of witness testimony with our own.[6]
Second, the defendants argue that the evidence does not support the jury’s conclusion that Peter Hiltgen’s negligence was not a proximate cause of the collision. This issue was raised by the defendants’ assertion of the defense of contributory negligence. Contributory negligence, under Alabama law, is a defense that is a complete bar to the plaintiffs recovery if proven. It is an affirmative defense on which the defendant bears the burden of proof. Robertson v. Travelers Inn, 613 So.2d 376, 379 (Ala.1993). In addition to the burden of showing that the plaintiff failed to use due care for his own safety, the defendants bore the burden of proving that such failure was a proximate cause of the injury. American Furniture Galleries, Inc. v. McWane, Inc., 477 So.2d 369, 372 (Ala.1985).
The element of causation may be broken down into two parts: factual or “but-for” causation and legal or proximate causation. Hilliard v. City of Huntsville Elec. Util. Bd., 599 So.2d 1108, 1111 (Ala.1992). Factual causation, or “but for” causation, asks whether the complained of injury or damage would have occurred but for the act or omission of the party in question. Proximate or legal causation asks whether the act or omission of that party is of such a nature that a court of law will recognize it as the legal cause of the injury.
There is no dispute that, as evidenced by his inaction prior to the collision, Hiltgen did not see the tractor-trailer in time to react to it. The central issue for the jury thus became “why?” The defendants contended that Hiltgen did not see the truck in time because of his contributory negligence. The plaintiff, on the other hand, contended that *701 the decedent simply did not have time to react and that contributory negligence played no part in the accident. This presented a question of factual causation.
The defendants presented evidence on three different theories of contributory negligence: that Hiltgen was operating his vehicle with only one working headlight, that he was driving too fast under the circumstances, and that he was inattentive to the road ahead of him. The court instructed the jury that Hilt-gen’s operation of a vehicle at night with only one functioning headlight constituted negligence per se under Alabama law. The court also instructed the jury that it could find Hiltgen to have been negligent in operating his vehicle at a greater rate of speed than was reasonable under the circumstances and/or in failing to keep a reasonable and proper lookout. By special verdict, the jury found that Hiltgen was acting negligently at the time of the accident, but that his negligence was not a proximate cause of the accident.
The uncontroverted evidence established that the Hiltgen van was operating with only one headlight functioning at the time of the accident, and the court appropriately instructed the jury that this defect constituted negligence per se. Therefore, the jury was obligated to find that Hiltgen was negligent in this respect, and this finding alone is sufficient to support the jury’s finding on the first element of contributory negligence. This finding is also consistent with the jury’s finding that Hiltgen’s negligence was not a proximate cause of the accident because experts for the plaintiff and the defendants testified that Hiltgen would not have been able to see any farther ahead with two functioning headlights.
The defendants correctly assert that the evidence allowed the jury to find that Hiltgen was driving unreasonably fast under the circumstances and failed to keep a proper lookout. Indeed, if we were reviewing, in isolation, the special verdict finding that Peter Hiltgen was acting negligently, this court would not hesitate to assume that the jury made such findings and conclude that those findings were supported by substantial evidence. Such a conclusion would follow naturally from our duty to view the evidence and all reasonable inferences in favor of the jury’s finding.
However, in the present case, we must also view the evidence and all reasonable inferences in favor of the special verdict finding that Hiltgen’s negligence was not a proximate cause of the accident. In fulfilling this obligation, we are constitutionally required under the Seventh Amendment to adopt a view of the case that makes the jury’s answers consistent. Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 798 (1962); Bourque v. Diamond M. Drilling Co., 623 F.2d 351, 353 (5th Cir.1980); Griffin v. Matherne, 471 F.2d 911, 915 (5th Cir.1973).[7]
Findings that Hiltgen was negligently driving an unreasonable speed or failing to keep a proper lookout would create a serious conflict with the jury’s finding that Hiltgen’s negligence was not a proximate cause of the accident. Therefore, we must view the evidence of Hiltgen’s speed and attentiveness accordingly, i.e., in favor of the plaintiff.
Viewed in this light, the evidence allows a finding that Hiltgen was driving 65 m.p.h., the legal speed limit on 1-20. The defendants contend that under the circumstances, including that the decedent was driving with only one functioning headlight, this was an unreasonable speed and should be deemed negligent. However, we cannot conclude that this conduct constituted negligence *702 as a matter of law; nor can we assume that the jury found it to be negligent.
The defendants also contend that the evidence requires a finding that Hiltgen was negligently inattentive to the road ahead of him. We disagree. The parties presented evidence, including expert testimony, regarding the relative speeds of the two vehicles, the time Hiltgen had to react, and the time an average person would have needed to react and avoid the collision. The experts for both sides were cross-examined thoroughly. Both sides presented ample evidence on this issue to present a question for the jury.
The evidence shows, as discussed above, that the Hiltgen van was travelling 65 m.p.h. Based on the estimated stopping distance of the truck, the police report indicated that the truck could not have been going more than 31-32 m.p.h. at the time of the accident. Using this calculation, the plaintiffs expert witness, Thomas Langley, estimated that the truck was travelling at approximately 30 m.p.h. at the time of the accident. However, the plaintiff also presented the testimony of Howard Lucas who purchased the truck from Abston following the accident. Lucas testified that considering the gear Sumrall said he was in at the time of the accident, he could not have been driving more than 20-25 m.p.h.
Langley’s testimony indicates that the reflection of the safety reflectors on the rear of the tractor-trailer would have first become visible when the Hiltgen van was 125 feet from it. However, Mr. Langley’s testimony also indicates that this reflection would not necessarily produce a sufficient stimulus at 125 feet to induce an instant reaction in a fully attentive individual. In addition, he testified that the body of the truck would not have become visible until the van was 100 feet from it. There was also testimony that the average human reaction time is 1.5 seconds.
The defendants attempt to use mathematical calculations to show that they have established negligence and proximate cause conclusively. They argue that based on the estimates used by plaintiffs expert, the truck was moving 30 m.p.h. and Hiltgen should have seen a reflection 125 feet behind it. By the defendants’ calculations, this indicates that the Hiltgen van was closing on the tractor-tailer at a speed of 35 m.p.h. and thus that Hiltgen had 2.44 seconds[8] to react and avoid the collision. They then point to Langley’s testimony that Hiltgen would have needed 2.43 seconds to complete a critical swerve to miss the tractor-trailer.[9] Therefore, they conclude, Hiltgen had more than enough time to avoid the fatal crash had he been paying attention. Based on this difference of one one-hundredth of a second,[10] derived from an expert’s estimates, the Defendants contend that they have conclusively shown negligent inattentiveness, by Hiltgen’s failure to take any action, and proximate cause, by the fact that Hiltgen could have avoided the accident in the time he had to react.
The flaw in defendants’ argument is that the jury was not required to rely on Mr. Langley’s estimates. The testimony of Howard Lucas was sufficient to allow the jury to find that the Sumrall truck was moving as slow as 20 m.p.h. at the time of the accident. The jury also could have found that a reasonably prudent person might not have recognized the perilous situation until the truck itself was visible at 100 feet. Considering these facts, the jury could have concluded that Hiltgen had only 1.5 seconds[11] from the time he first saw the truck until he crashed into the rear of it. Since, according to the testimony, 1.5. seconds is the average human *703 reaction time, the jury certainly could have concluded that Hiltgen was not negligently inattentive, and thus that inattentiveness was not a proximate cause of the accident.
In addition, the testimony of Franklin Howard, Gordon Simpson, and Britt Smith that Hiltgen was not driving recklessly and appeared to be in control of his van immediately prior to the accident supports the conclusion that Hiltgen was not negligently inattentive to the road ahead of him. Therefore, clearly the jury was not obligated to find that the decedent was negligent on this basis, and we cannot assume that it did so.
We must be especially careful when reviewing the sufficiency of the evidence where the party seeking relief, the defendants in this case, had the burden of proof on the issue in question.[12] We reiterate that defendants had the burden of establishing that Hiltgen’s negligence was a proximate cause of the fatal accident. Although we must uphold the jury’s finding that Hiltgen acted negligently, we cannot say that the defendants presented such proof that a reasonable jury could only conclude that Peter Hiltgen’s negligence was a factual and legal cause of the accident. Therefore, we hold that the jury’s findings regarding negligence and proximate causation are supported by legally sufficient evidence.
MOTION FOR NEW TRIAL
Our review of the district court’s denial of a motion for new trial is more deferential than our review of a denial of a motion for a judgment as a matter of law. “We will reverse the trial court’s denial of a motion for new trial only when there is a clear showing of an abuse of discretion.” Dawsey v. Olin Corp., 782 F.2d 1254, 1261 (5th Cir.1986).
1. WEIGHT OF THE EVIDENCE
Defendants argue that they are entitled to a new trial because the jury’s verdict is contrary to the great weight of the evidence. To show an abuse of discretion, the defendants would have to be able to show “an absolute absence of evidence to support the jury’s verdict.” Dawsey, 782 F.2d at 1262 (quoting Bailey v. Southern Pacific Transp. Co., 613 F.2d 1385, 1391 (5th Cir.) (per curiam) (quoting Urti v. Transport Commercial Corp., 479 F.2d 766, 769 (5th Cir.1973)), cert. den., 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980)). Since we have already held that the jury’s verdict was supported by the evidence, we do not find an abuse of discretion.
2. ERROR OF THE TRIAL COURT
Defendants also argue that they are entitled to a new trial because certain instructions given to the jury and stipulated facts read to the jury may have led the jury to believe that it could find the Defendant Sum-rail negligent on some unsupported general theory of negligence. We have reviewed the district court’s charge to the jury and conclude that it accurately reflects applicable law. In addition, we do not believe that the order of the instructions created any risk of confusion. “Trial courts are accorded great latitude in shaping instructions, and a verdict based judgment will be reversed because of an erroneous instruction only when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.” Mayo v. Borden, Inc., 784 F.2d 671, 672 (5th Cir.1986) (citations omitted). We have no such doubt in this case.
The defendants also cite the fact that the district court read stipulated facts contained in the pre-trial order to the jury at the beginning of the trial. To the extent that such stipulated facts were not relevant to the issues to be tried, their submission to the jury would seem to be contrary to Federal Rule of Evidence 402, which provides that “[ejvidence which is not relevant is not admissible.” However, we do not believe that any of the stipulated facts created a substantial risk of confusion or prejudice. Therefore, we find that the district judge did not abuse his discretion in denying the defendants’ motion for new trial on this basis.
*704 3. EXCESSIVE DAMAGES/REMITTI-TUR
The defendants also contend that the jury’s award of punitive damages is excessive and that they are entitled to a new trial on damages or a remittitur of the jury verdict. The district court properly instructed the jury on punitive damages, and the jury awarded the plaintiff $1,500,000.00. On defendants’ motion for new trial or remittitur, the district court held a hearing to review the award for excessiveness and applied the factors provided by Alabama substantive law.[13] The district court fully considered the prescribed factors and held that the award was not excessive under Alabama law. The district court’s decision in this regard is accorded considerable deference and should not be reversed absent an abuse of discretion. Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 279-80, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989). Applying this standard of review, we find no error.
ABSTON’S VICARIOUS LIABILITY
In addition to the arguments applicable to both defendants, Defendant Abston contends that he cannot be held liable for Defendant Sumrall’s actions. This argument requires us to review both questions of law and findings of fact.
First, Abston argues that, as a matter of law, he cannot be held liable for Sumrall’s actions under the doctrine of respondeat superior because federal regulations required Defendant Mason, as the lessee of the truck, to have “exclusive possession, control, and use” of the tractor-trailer provided by Ab-ston.[14] Indeed, the lease, and the controlling federal regulations, provide the basis for Defendant Mason’s liability in the present case. In Simmons v. King, this court recognized that the lessee’s liability under such a lease[15] is not governed by the common law doctrine of respondeat superior. Simmons, 478 F.2d 857, 867 (5th Cir.1973). Instead, the assumption of responsibility required by the federal regulations made the loaned driver the statutory employee of the lessee, and rendered the lessee vicariously liable as a matter of law. Id.
We also held in Simmons that the legal responsibility of the lessee mandated by the federal regulations did not preclude the lessor’s liability under common law standards of control. Id.
This is not as incongruous as might be supposed. ICC can mandate a positive legal responsibility which we uphold in the only way it would be meaningful — to give protection to the injured member of the public[.] At the same time [the lessor] has, or may have, a practical control over [the driver] of a kind which would allow it to obtain an automatic insulation from liability from the mere terms of a lease between two parties.
Id. Therefore, to determine whether Defendant Abston may be held vicariously liable under the circumstances presented, we must first look to the applicable state law.
The district court held that Mississippi law would be applied to the determination of this issue and this ruling has not been appealed. Although the Mississippi courts have used multi-factored tests to determine vicarious liability in different contexts, it also has held that the core issue is whether the employer had sufficient control that he ought *705 to be held liable for the negligent acts of the “employee”. See Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss.1988).
The Mississippi courts have not addressed the application of the doctrine of respondeat superior to a situation like this one where a trip-lease purports to vest exclusive control over the equipment in a third-party lessee. However, we have no reason to conclude that the Mississippi court would allow an employer to avoid vicarious liability by operation of such a contract while retaining de facto control of the employee. Therefore, we hold that under Mississippi law, an employer can be subject to vicarious liability based on a right or power to control an employee’s actions despite the intervention of a written equipment lease that purports to vest exclusive control in a third-party lessee.
Since we find that the vicarious liability claim against Defendant Abston is not precluded by federal law or Mississippi state law, we must consider the relevant facts and review the district court’s rulings on this issue. Abston testified that Sumrall was working for him and was loaned to Mason for the purpose of delivering specific cargo. Sumrall testified that he considered Abston his boss. After the accident, Sumrall telephoned Abston to report the accident and to obtain permission to complete the scheduled trip. In addition, it is clear that Sumrall’s activity was in furtherance of Abston’s business.
With these facts in mind, and in light of the law discussed above, we do not hesitate to affirm the district court’s rulings. Clearly, these facts are sufficient to justify the district court’s denial of Abston’s motion for summary judgment. In other words, we agree that there existed a genuine issue of material fact with regard to Abston’s control of Sumrall. Likewise, we affirm the district court’s denial of Abston’s motion for judgment as a matter of law because the jury’s finding with regard to Abston’s liability is more than sufficiently supported by the evidence.
CONCLUSION
After carefully reviewing the alleged errors raised by the defendants, we are of the opinion that all of them are without merit. Accordingly, the judgment of the district court is
AFFIRMED.

. See, e.g., Alabama Power Co. v. Scholz, 283 Ala. 232, 215 So.2d 447, 452 (1968).

. Defendant Mason conceded prior to trial that it was responsible, by operation of the trip lease and federal regulations, for Sumrall’s actions. Therefore, there was no separate instruction or finding of the jury regarding Mason's liability.

. Under Alabama law, the plaintiff in a wrongful death action may only recover punitive damages. See, e.g., Tatum v. Schering Corp., 523 So.2d 1042, 1052-57 (Ala.1988). Having ruled that Alabama law applied, the district court appropriately instructed the jury on punitive damages.

. Industrial Chem. & Fiberglass Corp. v. Chandler, 547 So.2d 812, 839 (Ala.1988).

. Federal District Court Record at Vol. 12, p. 1531 n. 3.

. The defendants also contend that the "negative” testimony of the plaintiff’s witnesses should not be allowed to outweigh Sumrall’s "positive” testimony to the contrary. Although the defendants have made a valiant effort to phrase this argument in the language of legal technicality, in essence it is no more than a request that we take the questions of weight and credibility away from the jury. We must deny this request for the reasons given above.

. The proper standard of review, as the dissent acknowledges, requires us to view the evidence in the light most favorable to the jury's verdict. This standard necessarily applies to the verdict as a whole. The dissent's approach would undermine the deferential standard for reviewing jury verdicts by allowing the appellate court to assume specific fact findings with regard to a particular special verdict even if those findings cause a direct conflict with another special verdict. Contrary to the dissent's allegation that we offer no precedent in support of our methodology, the cases cited above require the standard of review we apply.

. 125 feet would be covered at a speed of 35 m.p.h. (51.33 feet per second) in 2.4352 seconds.

. Langley testified that a driver would need 232 feet at 65 m.p.h. (95.33 feet per second) to complete a critical swerve. When these figures are used to compute the time needed at a constant speed, the result is 2.4347 seconds.

. When the calculations are carried out two more decimal places, it can be seen that the slim reed on which the defendants rely is actually five ten-thousandths of a second.

. If the truck were travelling 20 m.p.h., the closing speed of the van would have been 45 m.p.h. or 66 feet per second. 100 feet can be covered at 66 feet per second in 1.515 seconds.

. See Allen v. Seacoast Products, Inc., 623 F.2d 355, 360 n. 9 (5th Cir.1980); Steven A. Childress & Martha S. Davis, Federal Standards of Review § 3.06, at 3-65 (2d ed. 1992); 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2535, at 592-93 (1971).

. See Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989).

. The Federal Motor Carrier Leasing Regulations governed the lease entered into by Abston and Mason. Section 1057.12 of those regulations states, in relevant part:
(c) Exclusive possession and responsibilities' — •
(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
49 C.F.R. § 1057.12.

.In Simmons, as required by federal regulation, the lease provided
It is understood that the leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers and the Interstate Commerce Commission.
Simmons, 478 F.2d at 862 n. 13.