United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2005**

Charles R. Fulbruge III
Clerk

**REVISED JANUARY 6, 2005**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————————————

No. 03-30782

———————————————

RICKEY BROWN,

Plaintiff - Appellee,

versus

PARKER DRILLING OFFSHORE CORPORATION,

Defendant - Appellant.

———————————————————————————

Appeal from the United States District Court
For the Eastern District of Louisiana
(No. 02-1911)

———————————————————————————

Before DeMOSS, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This case presents numerous questions arising from a seaman's suit against his employer to

recover damages for an injury allegedly sustained while aboard the employer's vessel. Following a

jury trial, the seaman was awarded damages. The employer appeals, contending that the jury erred

when it found that the seaman had not willfully concealed his prior back injuries, and that the

1

employer had been unreasonable in withholding maintenance and cure benefits.[1]  We agree with the

employer's contentions, and accordingly reverse.

## I.  FACTS AND PROCEEDINGS

Rickey Brown injured his back in August 1998 while lifting a sack of corn.  Brown was

treated at an emergency room and issued a wheelchair and walker.  Brown told his treating physician,

Dr. Walter Johnston, that he heard a "pop" in his back during the accident.

Ten months later, on June 29, 1999, Brown applied to work as a seaman for LeTourneau, Inc.

As part of the application process, Brown filled out LeTourneau's medical questionnaire.  Brown

checked "No" when asked whether he had ever suffered from "Back Trouble."  Based in part on this

representation, LeTourneau hired Brown.  In late May 2000, while working for LeTourneau, Brown

alleged that he injured his back.  Brown was again treated by Dr. Johnston.  After the accident,

Brown was terminated from LeTourneau for falsely reporting an on-the-job accident,  filing a false

accident claim, and failing to disclose his 1998 back injury on LeTourneau's medical questionnaire.

On August 15, 2000, two months after being fired by LeTourneau, Brown applied to work

as a floorhand for Parker Drilling Offshore Corp. ("Parker").  On Parker's medical questionnaire,

Brown checked "No" when asked whether he had "Past or Present Back and Neck Trouble."[2]  Based

in part on this representation, Parker hired Brown.

---

[1] The employer also argues that the district court improperly instructed the jury about special damages, and that the seaman improperly invoked the Golden Rule during closing arguments. Because we agree with the first two arguments, however, we need not reach these issues.

[2] The form stated above Brown's signature:

FAILURE TO ANSWER TRUTHFULLY MAY RESULT IN THE FORFEITURE OF WORKER'S COMP BENEFITS.  I have read the above statements and the answers to the above questions and I certify them to be true and correct.

2

On April 20, 2001, Brown reported to his superior, Tommy Harter ("Harter"), that he felt back pain while pulling slips out of the master bushings of the rotary table aboard the Parker rig. Harter sent Brown off the rig floor to complete an accident report. Brown later explained that the master bushings came up and then popped back down, causing the slip he was holding, which was attached to the master bushings in the rotary table, to suddenly jerk him. During its accident investigation, Parker came to believe that Brown's back injury was not sustained aboard the vessel, and that Brown had willfully concealed his prior back injuries. Based upon these beliefs, Parker withheld payment of Brown's maintenance and cure benefits.

Brown sued Parker for (1) negligence under the Jones Act, (2) unseaworthiness under general maritime law, (3) retaliatory discharge, (4) maintenance and cure benefits, and (5) compensatory damages resulting from Parker's failure to pay such benefits. Parker countered that Brown was not entitled to maintenance and cure on the ground that he willfully concealed his past back injuries, and that Brown was not entitled to compensatory damages because Parker withheld benefit payments in reliance upon a reasonable defense. The jury ultimately returned a verdict finding for Brown in part.[3] Specifically, the jury found that Brown was injured due to the negligence of Parker,[4] that Brown was entitled to maintenance and cure because he did not willfully conceal his medical condition, and that Brown was entitled to compensatory damages because Parker unreasonably withheld maintenance and cure benefits.

---

[3] The jury, however, agreed with Parker on the claims of unseaworthiness and retaliatory discharge.

[4] The jury found that, due to Brown's contributory negligence, Parker was only 75% liable for Brown's injuries.

3

By Order and Reasons dated July 30, 2003, the district court denied Parker's motion for judgment as a matter of law and, alternatively, for a new trial.[5] The district court later entered judgment against Parker for $414,840.

Parker timely appeals, contending that Brown willfully concealed his medical condition from Parker, and that Parker's withholding of Brown's maintenance and cure benefits was reasonable.

## II. STANDARD OF REVIEW

This Court reviews factual findings of a jury for clear error. *In re Gearhart*, 348 F.3d 89, 91 (5th Cir. 2003). Under a clear error standard, this Court will reverse "only if on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Otto Candies, LLC v. Nippon Kaija Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003).

## III. DISCUSSION

A.  The jury clearly erred when it found that Brown had not willfully concealed his medical condition.

Parker contends that the jury committed clear error by finding that Brown had not willfully concealed his prior back injuries when he completed Parker's medical questionnaire. A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits. *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518–20 (5th Cir. 1986). An employer is allowed to rely on certain legal defenses to deny these claims. *McCorpen v. Cent. Gulf Steamship Corp.*, 396 F.2d 547, 548–49 (5th Cir. 1968). One such defense is that the injured seaman willfully concealed from his employer

---

[5] The district court, however, did grant Parker's motion for remittitur, reducing the jury's award for future medical expenses from $150,000 to $100,000.

a preexisting medical condition. *Id.* In order to establish "willful concealment," an employer must show that:

(1)     the claimant intentionally misrepresented or concealed medical facts;

(2)     the non-disclosed facts were material to the employer's decision to hire the claimant; and

(3)     a connection exists between the withheld information and the injury complained of in the lawsuit.

*Id.*; *Deisler v. McCormack Aggregates, Inc.*, 54 F.3d 1074, 1080–81 (3d Cir. 1995). Parker contends that the jury committed clear error by not finding that each one of these elements was established by a preponderance of the evidence.

(1)     Intent to conceal

Parker's medical questionnaire asked whether Brown had suffered "Past or Present Back and Neck Trouble." Brown answered this question in the negative. Parker contends that this response constitutes an intentional concealment of a medical condition because Brown: (1) had been treated for back injuries on two occasions prior to the time he completed Parker's medical questionnaire; (2) had been fired from LeTourneau for falsely reporting an on-the-job accident, filing a false accident claim, and denying that he had suffered from prior "Back Trouble" on LeTourneau's employment medical questionnaire; and (3) misstated during his deposition that he had not sought medical care while working at LeTourneau. These facts—which tend to show that Brown had sustained back injuries prior to completing Parker's medical questionnaire, that Brown knew at the time he completed the questionnaire that these injuries constituted "back trouble" in the eyes of a past employer, and that Brown habitually lied about his prior injuries—were established by Parker at trial.

5

The jury nonetheless found that Brown had not intended to conceal his medical condition from Parker.

Brown now offers two explanations for the jury's finding that he did not intentionally conceal his medical condition. First, he alleges that the question at issue on the Parker medical questionnaire is compound. Second, he argues that he did not understand the definition of "trouble." Both arguments fail.

a.    Compound question

As stated *supra*, the question at issue on Parker's medical questionnaire asked whether Brown had "Past or Present Back *and* Neck Trouble" (emphasis added). Brown points out that this question is compound, and argues that a prospective employee could answer it in the affirmative only if he had suffered from *both* back and neck trouble.[6]    Brown's argument is not well-taken. Because Brown did not argue this point to the district court or the jury, it is waived on appeal. *See, e.g., Greenberg v. Crossroads Sys.*, 364 F.3d 657, 669 (5th Cir. 2004). The briefs cite no testimony to show that Brown in fact interpreted the question to be compound, and Brown points to none. The jury could not have rationally inferred that Brown did not lie on the questionnaire. In spite of the arguably ambiguous nature of the question (and the fact that Brown had never suffered a neck injury), Brown's

_____

[6] While the question is compound, the manner in which it is set forth on the questionnaire, and Brown's responses, belie Brown's assertion that he treated it as a compound question. The questionnaire asks: "Have you had or do you now have any of the following? If so, what and when?" It then lists a variety of conditions, and a space to check "Y" or "N". The item at issue in this case occupies two lines on the questionnaire. The first line reads: "Past or Present Back and"; the second line reads: "Neck Trouble". Brown checked the "N" box for each line. App. to Appellant's Br. at Tab 3.

acknowledgment that he had been fired from LeTourneau due to his "back trouble" establishes that he intentionally concealed his medical condition on Parker's medical questionnaire.

b.      Brown did not know his injuries constituted "trouble"

To further support his claim that he did not intend to conceal his medical condition from Parker, Brown alleges that he did not understand that his back injuries constituted back "trouble." He states that he instead interpreted "trouble" to indicate serious injuries such as a broken disc or neck.

When questioned at trial about his appointments with Dr. Johnston that preceded his employment with Parker, Brown explained that he had been treated for a "sore back" and a "pulled muscle":

> Q.      Were you having any type of *back trouble* when you filled out the Parker Application?
>
> A.      I just had that pulled muscle, you know. They scanned me about that right now, so I guess I had to say I had a back pulled muscle. It's *back troubles*, they said.
>
> Q.      What did you think when you read on the application "Had you ever had back trouble," what came to your mind?
>
> A.      Disc and all of that, you know, broke back, a disc, neck being broke or something, the injury is a real one instead of a pulled muscle.

Trial Tr. at 109 (emphasis added).

Brown acknowledged on cross-examination, however, that he had been fired from his job at LeTourneau "for [his] back trouble."

> Q.      Why were you fired from LeTourneau?
>
> A.      For my *back trouble*.

7

*Id.* at 118 (emphasis added).

This admission seems to demonstrate that Brown recognized, only two months before he completed the Parker medical questionnaire, that his minor injuries, *i.e.*, pulled muscles and back strains, rose to the level of "back trouble" in the eyes of a past employer. Nonetheless, the district court observed that Brown was "a former special education student who exhibited a non-confrontational demeanor at trial [and] was subjected to rigorous cross-examination and . . . was repeatedly accused by defense counsel of lying." It is certainly within the jury's discretion to interpret liberally the testimony of inarticulate or intimidated witnesses. *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 572 (5th Cir. 2002). Because the jury may have discounted Brown's trial testimony for the same reasons cited by the district court, Brown's characterization of his prior injuries as "trouble" on cross-examination, without more, may have been insufficient to show that Brown knew that he had "back trouble."

Brown's understanding of his prior injury as "trouble," however, seems to have been established by the circumstances surrounding his termination from LeTourneau. Brown was fired for answering "No" on LeTourneau's medical questionnaire when asked whether he had suffered from "back trouble." At trial, Brown testified to the following:

> Q. And I believe that you had testified earlier that the reason they, at LeTourneau, got rid of you, didn't want you to work there anymore, is because LeTourneau found out about your past; they found out about your lying on the application, or whatever, is that right?
>
> A. Yes, sir.
>
> Q. And the reason LeTourneau, Mr. Fant at LeTourneau came to you and said "Hey, we can't have you working here," is because he showed you the employment application where you checked off "No," about prior back problems, right?

A. Yeah.

Q. And he said "I can't have anybody working here like that who misrepresents the application," right? He told you that?

A. Yes.

*Id.* at 115-16. Such testimony shows that Brown knew he had been fired from LeTourneau for denying that he had "back trouble." This renders implausible Brown's explanation that, two months later, he did not understand the definition of "trouble" on Parker's medical questionnaire.

It is clear that Brown suffered previous back injuries and that he was fired from a previous job for not disclosing his "back trouble."

(2) Materiality and causality

The other two elements of the "willful concealment" inquiry, *i.e.*, materiality and causality, were clearly established at trial. The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis. *See McCorpen,* 396 F.2d at 549. Brown's history of back injuries is the exact type of information sought by employers like Parker. And Brown, by his own admission, realized that information about his back condition had been important to one of his past employers. Brown's counterargument—that he could perform heavy labor tasks for his first few months on the job—is irrelevant: Parker based its hiring decision (at least, in part) upon whether applicants had "Past or Present Back and Neck Trouble," not whether they could, on the date of their application, complete difficult manual labor tasks. Materiality was established at trial.

Further, Parker demonstrated that a nexus existed between Brown's preexisting injury and his injury supporting this lawsuit. The requisite causal link is established if the preexisting injury and

9

the new injury are located in the same part of the body. *Caulfield v. Kathryn Rae Towing,* 1989 WL 121586, at *2 (E.D. La. June 6, 1989); *Lancaster Towing, Inc. v. Davis*, 681 F.Supp. 387, 388–89 (N.D. Miss. 1988). The testimony at trial established that Brown suffered a lumbar strain in 1998 and 2000, with possible disc herniation, at L-4/L-5 and L-5/S-1. Even Dr. Grant Dona ("Dr. Dona"), Brown's expert witness, acknowledged that Brown's prior back strains were to the same lumbar-spine region as his current back problem. Because Brown's injuries were to the same location of the lumbar spine, the causal link between the allegedly concealed information and the new injury was established at trial.

Parker established at trial: (1) Brown's intent to conceal his medical condition; (2) that the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection existed between the withheld information and the injury complained of in the lawsuit. As a result, the judgment of the district court that Brown is entitled to maintenance and cure benefits should be reversed.

B.     The jury clearly erred when it found that Parker's withholding of maintenance and cure benefits had been unreasonable.

Parker contends that the jury clearly erred by finding that Brown acted unreasonably in withholding Brown's maintenance and cure benefits. This Court has recognized that

> there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. *If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages*. If the shipowner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.

*Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987) (emphasis added).

10

Parker offers two explanations for its failure to pay maintenance and cure: (1) Brown willfully concealed his prior medical condition, and (2) Brown's injury was not sustained on Parker's vessel. The question before us is whether the jury clearly erred by finding that Parker's reliance on these explanations was unreasonable.[7]

We hold that the jury erred in finding that it was unreasonable for Parker to withhold benefits because Parker's refusal was based on a reasonable defense: that Brown had willfully concealed his medical condition. The jury could not rationally have determined that Parker was unreasonable in relying on this defense, so their finding constitutes clear error. Accordingly, we need not reach Parker's second explanation for withholding benefits.

## IV. CONCLUSION

Because we conclude that the jury's finding that Brown did not willfully conceal his back injuries was a clear error, the jury's verdict is hereby VACATED, and the matter DISMISSED WITH PREJUDICE.

---

[7] Parker points out that Brown did not even seek attorney's fees, and thus "Parker's actions were not attacked as arbitrary and capricious by Brown." This fact, while true, is irrelevant to the issue before this Court. Compensatory damages do not turn upon the employer's arbitrariness and capriciousness, but rather upon the employer's unreasonableness. *See Morales*, 829 F.2d at 1358 ("If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees."). Because one who acts merely unreasonably is less culpable than one who acts arbitrarily and capriciously, the fact that Brown did not seek attorney's fees is beside the point.

CARL E. STEWART, Circuit Judge, dissents.

Following a three-day jury trial in this hotly contested maintenance and cure lawsuit, the jury deliberated for five hours over all the competing claims of the parties and then returned a verdict in favor of Brown in the amount of $150,000. Having remitted the verdict to $100,000, the trial court fully discussed the facts and law pertaining to Parker's post-trial motions and then denied them. Despite this context, the panel majority sifts through the evidence, essentially declares Brown to be unworthy of belief by the jury, and then substitutes its appellate judgment for that of the jury. The majority discards the plaintiff's verdict and summarily renders a substitute verdict for Parker, the employer. Because I decline to participate in the majority's usurpation of the jury's function, I respectfully dissent.

The majority anchors its analysis on McCorpen v. Central Gulf Steamship Corp., 396 F.2d. 547 (5th Cir. 1968). I have no quarrel with Parker's right to assert a wilful concealment defense in this case. However, McCorpen also provided that, "[i]f the shipowner is unable to persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance, he will be liable for maintenance." 396 F.2d. at 549; see also Springboard v. Am. Commercial Barge Lines, Inc., 767 F.2d 89, 94-95 (5th Cir. 1985); Guevara v. Maritime Overseas Corp., 34 F.3d 1279, 1281 (5th Cir. 1994) (stating that "the standard of review in a Jones Act case is highly deferential"). Brown testified, and his trial counsel presented evidence, that Brown did not consider his prior injuries to be "back problems" within the meaning of Parker's employment application, but instead considered his prior injuries mere muscle pulls. Thus, the question whether Brown "fraudulently" concealed prior "back problems," within the meaning of Parker's employment

12

application, was, in this instance, one of credibility. Questions of credibility should properly be left to the fact-finder. See e.g., Polanco v. City of Austin, Tex., 78 F.3d 968. 976-77 (5th Cir. 1996).

On appeal, Parker contests the district court's rulings on its post-judgment motion for judgment as a matter of law, or in the alternative, motion for new trial, or for remittitur. The panel majority's reversal of the jury's verdict here is tantamount to a judgment as matter of law, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. "A motion for judgment as a matter of law . . . in an act ion tried by jury is [, in essence,] a challenge to the legal sufficiency of the evidence supporting the jury's verdict." Hiltgen v. Sumrall, 47 F.3d 695, 699 (5th Cir. 1995). Review under Rule 50(a) of a trial court's denial of a motion for judgment as a matter of law is *de novo*. This court must apply the same standard the district court used when it first considered the motion, on the first pass. Hiltgen, 47 F.3d at 699. Thus, we will uphold a jury verdict unless "there is no legally sufficient evidentiary basis for a reasonable jury to find" as it did. FED. R. CIV. P. 50(a). "Ambiguities and doubts are to be resolved in favor of the seaman." Springborn v. American Commercial Barge Line, 767 F.2d 89, 94 (5th Cir. 1985). To show deference to a jury's decision, this court has consistently stated that,

> [a] jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict.

> On appeal, we are bound to view the evidence and all reasonable inferences *in the light most favorable to the jury's determination*. Even though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses. We must not

13

substitute for the jury's reasonable factual inferences other inferences that we may regard as more reasonable.

Rideau v. Parkem Indus. Services, Inc., 917 F.2d 892, 897 (5th Cir. 1990) (citations and quotations omitted) (emphasis supplied).[8]

Despite the fact that a seaman's right to maintenance and cure is "very broad" and "rarely withheld," see, e.g, Wactor v. Spartan Trans. Corp., 27 F.3d 347, 352 (8th Cir. 1994), that right is not without its limitations. McCorpen, 396 F.2d at 549. The majority correctly points out that Parker, in order to deny Brown's maintenance and cure claim, is entitled to rely on the McCorpen defense that Brown "willfully concealed" a preexisting medical condition. Id. (noting that, "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview [, as in the instant case,] and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure").

---

[8] Although the panel majority does not elaborate on the historic nature of maintenance and cure, especially as it relates to the doctrine being favorable to seamen, there is no difference in its understanding of maintenance and cure and mine. "Maintenance" and "cure" is a contractual form of compensation provided under general maritime law to seaman who become ill or injured while in the service of their ship. McCorpen, 396 F.2d at 548. See also M. Norris, 2 The Law of Seaman § 26: 2, at 3 (4th ed. 1985); accord Brister v. AWI, Inc., 946 F.2d 350, 360 (5th Cir. 1991). An employer's duty to pay maintenance and cure is not dependent on the employer's or the seaman's negligence; but rather, maintenance and cure is a seaman's right implied in the relationship between the seaman and the owner of the vessel. Brister, 946 F.2d at 360; see also Bertram v. Freeport McMoran, 35 F.3d 1008, 1012 (5th Cir. 1994). "Thus, an owner of a vessel is almost automatically liable for the cost of medical treatment and basic living expenses when a seaman in its employ is injured." Brister, 946 F.2d at 360; see also Charpentier v. Blue Streak Offshore, Inc., 1997 WL 426093, at *8 (E.D. La.) (stating that "[m]aintenance and cure are available even where a seaman has a longstanding illness which does not manifest itself until some point during his employment on a vessel, even if that employment is not responsible for causing the illness to appear or worsen") (footnotes omitted). Indeed, the Supreme Court has stated that "when there are ambiguities or doubts [as to a seaman's right to maintenance and cure], they are to be resolved in favor of the seaman." Vaughn v. Atkinson, 369 U.S. 527, 532 (1962); accord Gaspard v. Taylor Diving & Salvage Co., Inc., 649 F.2d 372, 374 n.2 (5th Cir. Jul. 1981).

As the majority notes, in order to prove that Brown "willfully concealed" a preexisting medical condition, Parker must establish that Brown, (1) intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit. Id. at 548-49. My review of the record reveals that substantial evidence was presented at the trial for the jury to consider elements one and three of the McCorpen defense. As the shipowner, Parker had the burden of persuading "the court or the jury" that the complaining seaman was not entitled to an award of maintenance and cure. Id. The jury and the district court in the instant case were, both, unpersuaded by Parker's contention that Brown attempted to "intentionally" defraud it.

At trial, Brown brought five claims against Parker: a claim for (1) negligence under the Jones Act, (2) unseaworthiness under general maritime law, (3) retaliatory discharge, (4) maintenance and cure, and (5) unreasonable failure to pay maintenance and cure. After five hours of deliberation, the jury returned a favorable verdict for Brown on three of the five claims: negligence under the Jones Act, maintenance and cure, and unreasonable failure to pay maintenance and cure. The jury found for Parker on the claims for unseaworthiness and retaliatory discharge. On the claim for negligence under the Jones Act, the jury apportioned fault, finding Brown 75% at fault and Parker 25% at fault. Judgment was entered in favor of Brown on May 28, 2003. Parker filed a motion for judgment as a matter of law, or in the alternative, a motion for a new trial, or a motion for a remittitur. The district court considered the matter under the appropriate standard articulated under Rule 50(a). The district court first considered the evidence under the standard for a motion for judgment as a matter of law. Thus, the trial judge evaluated the facts to determine whether, after drawing all reasonable inferences in favor of Brown, there was a legally sufficient basis for a reasonable jury to find in favor

15

of Brown. The court then considered Parker's motion for a new trial. After weighing all the evidence anew, the court concluded that the jury's verdict was not against the great weight of the evidence. The district court cogently articulated in its order and reasons its explanation for denying the motion for judgment as a matter of law and the motion for a new trial. These reasons are based on detailed and careful analysis of the trial and supported by substantial facts in the record. The court observed:

> Contrary to the defendant's characterization of the plaintiff's testimony, whether or not the plaintiff **intended** [sic] to misrepresent or conceal material medical facts was a hotly disputed question of fact at trial. The plaintiff stated that because of the minor nature of the muscle pulls he had experienced in the past, he did not consider any prior back strains or muscle pulls to be "back injuries" when confronted with the question on the Parker employment application. He denied "intentionally concealing" any material medical information. It is apparent that the jury gave credence to his explanation and it rejected Parker's <u>McCorpen</u> defense.

> Viewing the evidence in the light most favorable to the non-moving party, the Court also finds that the plaintiff did offer substantial evidence supporting his Jones Act and maintenance and cure claims. Brown was, in fact, employed as a Jones Act seaman on the day of the accident on Parker's drilling vessel. Plaintiff testified that he was engaged in pulling slips on the rig floor when the slips stuck in the master bushing, causing them to rise from the drill floor and then suddenly drop, abruptly jerking the plaintiff and causing injury to his back. He reported the accident in a timely manner and he was placed on light duty.

16

Other evidence was presented which corroborates plaintiff's claim. There was testimony that the master bushing should have been greased to prevent it from sticking, that plaintiff had never actually been instructed to grease the master bushing, that under normal circumstances the master bushing should not rise from the drill floor, that Brown was an excellent employee during the six months prior to the accident that he worked for Parker, and that Brown had never exhibited back pain or a back injury prior to the accident. Plaintiff's drilling procedures expert, Mr. Kubelka, testified that the plaintiff was not properly trained and that the equipment in use on the Parker rig was not functioning properly. In addition, there was uncontradicted medical evidence that plaintiff does have a herniated disc in his lumbar region.

Parker's entire argument in favor of its motion for judgment as a matter of law is based upon its interpretation of the evidence in the light most favorable to its case, relying almost exclusively on its own credibility determinations. As noted above, however, in deciding a motion for judgment as a matter of law, the district court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. . . . "[I]t is the function of the jury as the traditional finder of facts, not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Delano-Pyle v. Victoria County, Texas, 302 F.3d 567, 572 (5th Cir. 2002), *quoting* McArthur v. Univ. of Tex. Health Ctr. at Tyler, 45 F.3d 890, 896 (5th Cir. 1995) (citation omitted). As noted, the district court's task is to determine if the facts and inferences point so strongly and

17

overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict, disregarding evidence favorable to the moving party that the jury is not required to believe. Id. (sic) Applying this stringent standard, the Court finds that the defendant's motion for judgment as a matter of law is without merit.

. . . .

With respect to the defendant's motion for a new trial on the Jones Act negligence and entitlement to maintenance and cure claims, for reasons previously stated, the motion is without merit.

This recitation by the trial judge alone is sufficient to demonstrate there was a lawful evidentiary basis for the district court to reasonably uphold the jury's verdict. Accordingly, our court is required to remain "mindful that, in light of the seventh amendment guarantee of the right to jury trial, . . . [this court has a duty to] proceed cautiously, and . . . [should] validate the jury verdict if at all possible." Gaspard, 649 F.2d at 374 n.2. This record indicates it is clearly possible to validate this verdict.

Notwithstanding the district court's conclusion, my review of the record, taken in the light most favorable to Brown, also finds substantial evidence to permit a reasonable jury to reject Parker's McCorpen defense. From the inception of opening statements to the final words of closing arguments, the salient facts of this case were fiercely debated. In opening statements, Brown's trial counsel delineated a succinct time line of Brown's first two injuries, leading up to the injury Brown alleges he sustained in the course of his employ at Parker: In 1998, Brown was treated in an emergency room in Vicksburg, Mississippi for what he claims was a pulled muscle resulting from the

18

lifting of an ice chest filled with one hundred pounds of corn. At the time of the first injury, Brown was seventeen years old and still in high school. Brown's x-rays were inconclusive as to whether he had a herniated disc. Still reeling from the pain, Brown visited his family physician, Dr. Johnston, five days later. In May of 1999, Brown graduated from high school. Brown testified that between the time of the first injury and the time of his second injury, he suffered no pain with his back. In August of 1999, Brown took a job with LeTourneau, Inc., a company at a shipyard that builds offshore drilling rigs. At LeTourneau, Brown was employed as a welder. Similar to what Brown would later encounter in Parker's employment application, LeTourneau's employment application contained a questionnaire inquiring whether Brown suffered, at that time, or in his past, "back problems." Brown did not inform LeTourneau of the incident with the corn, but testified that he failed to do so, only because he did not believe his prior injury constituted "back problems," within the meaning of LeTourneau's application. The evidence reveals that Brown continued to work for LeTourneau from August of 1999 until June of 2000, and that between that time, Brown suffered no pain with his back. In June of 2000, however, while lifting a heavy pipe during his employ for LeTourneau, Brown suffered a second injury to his back. Brown again visited Dr. Johnston, and Johnston again concluded that Brown had merely pulled a muscle. Brown was subsequently fired for not informing LeTourneau of the prior back injury. Evidence was presented by Parker's trial counsel that LeTourneau stated that it terminated Brown because Brown had fabricated the injury and was never actually injured. Parker even introduced a letter written by Bob Fant, Brown's LeTourneau supervisor, and signed by Brown, attesting to Brown's fabrication of the injury. Brown in rebuttal, however, testified that he signed the statement submitting that he had made up the story, but only did so because he believed it would salvage his job, at that time. Brown suggested that Fant instructed him to sign the letter to

19

keep his job, after Fant learned of Brown's prior injury from Brown's sister. However, when asked by his trial counsel whether he had in fact suffered the second injury, Brown testified that "yes" he had suffered the second injury. When asked how he sustained the second injury, Brown stated that the injury was caused by lifting a piece of heavy pipe during his employ with LeTourneau. Moreover, Parker's trial counsel asked Brown, during a vigorous cross-examination, whether by not listing his 1998 injury Brown was trying to intentionally deceive LeTourneau. Brown expressly testified that he was not trying to deceive LeTourneau. Brown testified, instead, that he did not list the 1998 injury because he did not consider his prior muscle pull to be deemed "back problems," within the meaning of LeTourneau's employment application.

On August 17, 2000, Brown commenced his employment with Parker. The evidence reveals that prior to accepting Parker's offer of employment, Brown was required to fill out an application containing a questionnaire of various inquires. One question, almost identical to LeTourneau's application, inquired whether Brown had suffered or was suffering from "back problems." Again, Brown did not list either the 1998 injury, or the injury he alleges he suffered at LeTourneau. Parker's trial counsel peppered Brown on cross-examination; Brown never waivered from his story that he did not consider either of his prior injuries to be "back problems," within the meaning of the employment applications. This evidence is only some of the record facts supporting a conclusion that the jury's verdict was supported by a sufficient evidentiary basis.

As to the first requirement of the McCorpen defense, i.e., whether Brown intentionally misrepresented or concealed medical facts, Brown and Parker, using the same time-line, both depicted contrasting stories of the events leading up to the injury Brown alleges he sustained in course of his employ with Parker. The jury accepted Brown's version of events, and rejected Parker's. This

20

record clearly demonstrates sufficient evidence, taken in the light most favorable to Brown, to reasonably support the jury's verdict as to this requirement. Brown's trial counsel presented his client as a young and unsophisticated kid who did not fully understand the meaning of his employers' employment applications. Even though Parker's trial counsel showed inconsistencies in Brown's stories, and specifically depicted Brown as liar who showed a pattern of fraud and deception by failing to list prior injuries in both LeTourneau's and Parker's application, Brown offered reasonable explanations for each inconsistency highlighted by Parker. Parker's trial counsel even had the benefit of vigorously cross-examining Brown, and yet, the jury still refused to accept Parker's McCorpen defense.

Indeed, before this court at oral argument Parker's appellate counsel acknowledged that their trial counsel skillfully used demonstrative evidence to highlight for the jury the salient points of Brown's testimony. Enlarged copies on "blow ups" were used to illuminate Brown's inconsistent statements and show that Brown was a liar. The jury flatly rejected Parker's version of the events. On the other hand, the jury was aware of Brown's age, and heard evidence suggesting that Brown had a low level of sophistication. Brown also underwent a rigorous medical physical by Parker's physician before he was allowed to work. Brown passed the physical examination according to Parker's standards, and the results of the exam indicated that, at the time Brown commenced employment with Parker, Brown was in good physical health. It was also possible for the jury to reasonably conclude that Brown did not consider his prior injuries to be "back problems" within the meaning of his employers' applications, thereby negating the notion that Brown intentionally concealed his prior injuries. Contrary to the majority's declaration, the jury in this instance could have reasonably accepted Brown's explanations for not listing his prior injuries on Parker's

21

employment application, mainly that he did not consider his prior back injuries to be "back problems."

The third McCorpen requirement, i.e., whether a connection existed between the withheld information and the injury complained of in the lawsuit, could also be fairly considered by the jury. The jury heard experts from both sides vigorously debate the cause of Brown's injury. Evidence was presented that x-rays of Brown's first injury were inconclusive to indicate that Brown suffered a herniated disc. Dr. Johnston testified that when he treated Brown on the two prior occasions, he concluded that Brown had merely suffered a muscle pull. Evidence was also presented by Parker's own expert neurosurgeons, Dr. Robert Mimeles and Dr. Robert Applebaum, which indicated that after the time Brown alleged he suffered the back injury during his employ with Parker, Brown in fact had a herniated disc. Moreover, there was no evidence presented to conclusively show that Brown sustained the herniated disc, prior to the incident at Parker. The jury was entitled to reasonably infer that the herniated disc resulted from the injury Brown sustained while working for Parker. The McCorpen defense requires a causal link; the jury in this case concluded that Parker did not establish that a connection existed between Brown's withheld information and the injury Brown alleges he sustained working for Parker.

The decisive factor in this case was one of credibility. Parker's counsel more than sufficiently put the issue of Brown's credibility before the jury. Again, the jury did not accept Parker's characterization of Brown as a liar. "Credibility is a question [properly left] for the jury." Boyle, 893 F.2d at 716. Indeed, the Supreme Court has perennially instructed appellate courts not to substitute their judgment for that of the jury. See e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (observing that "[c]redibility determinations, the weighing of evidence, and the drawing of

22

legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor "); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000) (stating that "although the [appellate] court[s] should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe"); Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555 (1999); Continental Ore Co. v. Union Carbide & Corp., 370 U.S. 690, 696-97 n.6 (1962).

Even more telling of the reasonableness of this jury's decision is the fact that the full evidence was weighed–a second time–by the district court who, having the advantage of sitting through the entire flow of the evidence, prior to, during, and after the trial, also rejected Parker's characterization of Brown. "When the district court denies a new trial, it ratifies the jury's assessment of the case . . . ." Eximco, Inc. v. Trane Co., 737 F.2d 505, 512 (5th Cir. 1984). Accordingly, "the party who initially persuaded the jury should not be stripped unfairly of a favorable decision." Id. Notwithstanding the panel majority's disclaimers to the contrary, I respectfully suggest that this is precisely what the panel majority is doing in this case. Verdicts based on a jury's fact findings, which appellate courts may not agree with, are rendered across this nation almost everyday, and yet, the verdicts are sustained because appellate courts have a legal duty to uphold such verdicts when the record reveals legally sufficient evidence to so. This court itself has repeatedly observed that, "[o]nly through *live* cross-examination can the fact-finder observe the demeanor of a witness, and assess his credibility. A cold transcript . . . is generally no substitute because it cannot unmask the veracity of a testifying witness clad in a costume of deception; it cannot unveil that a seemingly well-groomed witness is coming apart at the seams: 'that he fidgets when answering critical questions, his eyes shift

23

from the floor to the ceiling, and he manifest all other indicia traditionally attributed to perjurers.'" International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1265-66 (5th Cir. 1991) (quoting Anderson, 477 U.S. at 269-70) (emphasis in the original).

In my view, by finding that the there was insufficient evidence to support this verdict, the majority has erroneously substituted its view of the facts for that of the fact finders. For all of the above stated reasons, I therefore respectfully dissent.