United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 17, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

—————————————

No. 03-30782

—————————————

RICKEY BROWN,

Plaintiff - Appellee,

versus

PARKER DRILLING OFFSHORE CORPORATION,

Defendant - Appellant.

—————————————————————————

Appeal from the United States District Court
For the Eastern District of Louisiana

—————————————————————————

ORDER ON REHEARING
(Opinion 1/5/05, 5th Cir., 396 F.3d 319)

Before DeMOSS, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Having duly considered the petition for rehearing and response, we hereby substitute the

following opinion for the opinion issued on January 5, 2005.

This case presents numerous questions arising from a seaman's suit against his employer to

recover damages for an injury allegedly sustained while aboard the employer's vessel. Following a

jury trial, the seaman was awarded damages for his maintenance and cure and Jones Act negligence

claims. The employer appeals, contending that the jury erred when it found that the seaman had not

1

willfully concealed his prior back injuries, and that the employer had been unreasonable in withholding maintenance and cure benefits. The employer also argues that the district court improperly instructed the jury regarding special damages, and that the seaman improperly invoked the Golden Rule during closing arguments.

We agree with the employer regarding willful concealment, and accordingly vacate the award for maintenance and cure. On the issues of the jury instructions regarding the inconsistent verdict and the invocation of the Golden Rule, we hold in Brown's favor and affirm the decisions of the district court.

## I. FACTS AND PROCEEDINGS

Rickey Brown injured his back in August 1998 while lifting a sack of corn. Brown was treated at an emergency room and issued a wheelchair and walker. Brown told his treating physician, Dr. Walter Johnston, that he heard a "pop" in his back during the accident.

Ten months later, on June 29, 1999, Brown applied to work as a seaman for LeTourneau, Inc. As part of the application process, Brown filled out LeTourneau's medical questionnaire. Brown checked "No" when asked whether he had ever suffered from "Back Trouble." Based in part on this representation, LeTourneau hired Brown. In late May 2000, while working for LeTourneau, Brown alleged that he injured his back. Brown was again treated by Dr. Johnston. After the accident, Brown was terminated from LeTourneau for falsely reporting an on-the-job accident, filing a false accident claim, and failing to disclose his 1998 back injury on LeTourneau's medical questionnaire.

On August 15, 2000, two months after being fired by LeTourneau, Brown applied to work as a floorhand for Parker Drilling Offshore Corporation ("Parker Drilling"). On Parker Drilling's

2

medical questionnaire, Brown checked "No" when asked whether he had "Past or Present Back and Neck Trouble."[1] Based in part on this representation, Parker Drilling hired Brown.

On April 20, 2001, Brown reported to his supervisor that he felt back pain while pulling slips on the rotary table aboard the Parker Drilling rig. Brown was sent off the rig floor to complete a "Preliminary Incident/Investigation Report." The report stated: "While tripping pipe out of hole, I felt a pain in my lower left back when I pulled the slips out of the rotary table."[2] Brown later explained that the master bushings came up and then popped back down, causing the slip he was holding, which was attached to the master bushings in the rotary table, to suddenly jerk him. During its accident investigation, Parker Drilling came to believe that Brown's back injury had not been sustained aboard the vessel, and that Brown had willfully concealed his prior back injuries. Based upon these beliefs, Parker Drilling withheld payment of Brown's maintenance and cure benefits.

Brown sued Parker Drilling for (1) negligence under the Jones Act, (2) unseaworthiness under general maritime law, (3) retaliatory discharge, (4) maintenance and cure benefits, and (5) compensatory damages resulting from Parker Drilling's failure to pay such benefits. Parker Drilling countered that Brown was not entitled to maintenance and cure on the ground that he willfully concealed his past back injuries, and that Brown was not entitled to compensatory damages because Parker Drilling withheld benefit payments in reliance upon a reasonable defense. The jury ultimately

---

[1] The form stated above Brown's signature:

FAILURE TO ANSWER TRUTHFULLY MAY RESULT IN THE FORFEITURE OF WORKER'S COMP BENEFITS. I have read the above statements and the answers to the above questions and I certify them to be true and correct.

[2] The form stated that the incident description was "to be filled out by injured employee." Brown testified, however, that the safety representative, Tiger Megison, filled out the form in Brown's presence.

returned a verdict finding for Brown in part.[3]  Specifically, the jury found that Brown was injured due to the negligence of Parker Drilling,[4] that Brown was entitled to maintenance and cure because he did not willfully conceal his medical condition, and that Brown was entitled to compensatory damages because Parker Drilling unreasonably withheld maintenance and cure benefits.

By Order and Reasons dated July 30, 2003, the district court denied Parker Drilling's motion for judgment as a matter of law ("JMOL") and, alternatively, for a new trial.[5]  FED. R. CIV. P. 50. The district court later entered judgment against Parker Drilling for $414,840, and Parker Drilling timely appealed.

## II.  DISCUSSION

A.      **THE *McCORPEN* DEFENSE**

Parker Drilling contends on appeal that the jury committed clear error by finding that Brown had not willfully concealed his prior back injuries when he completed Parker Drilling's medical questionnaire.  We construe this assertion as an argument that the district judge erred in denying Parker Drilling's motion for JMOL.[6]

---

[3]  The jury, however, agreed with Parker Drilling on the claims of unseaworthiness and retaliatory discharge.

[4]  The jury found that, due to Brown's contributory negligence, Parker Drilling was only 75% liable for Brown's injuries.

[5]  The district court, however, did grant Parker Drilling's motion for remittitur, reducing the jury's award for future medical expenses from $150,000 to $100,000.

[6] This Court may, in its discretion, "liberally construe briefs in determining issues presented for review" in furtherance of the ends of justice.  *SEC v. Recile*, 10 F.3d 1093, 1096 (5th Cir. 1993); *see also Mcallister v. Resolution Trust Corp.*, 201 F.3d 570, 577 n.7 (5th Cir. 2000).

4

A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). An employer is allowed to rely on certain legal defenses to deny these claims. *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968). One such defense is that the injured seaman willfully concealed from his employer a preexisting medical condition. *Id.* In order to establish a *McCorpen* defense, an employer must show that

(1)     the claimant intentionally misrepresented or concealed medical facts;

(2)     the non-disclosed facts were material to the employer's decision to hire the claimant; and

(3)     a connection exists between the withheld information and the injury complained of in the lawsuit.

*Id.* at 548–49. Parker Drilling contends that the jury committed clear error by not finding that each one of these elements was established by a preponderance of the evidence. We review *de novo* the judge's order denying Parker Drilling's motion for JMOL.

(1)     *Intent to conceal*

Parker's medical questionnaire asked whether Brown had suffered "Past or Present Back and Neck Trouble." Brown answered this question in the negative. Parker Drilling contends that this response constitutes an intentional concealment of a medical condition because Brown (1) had been treated for back injuries on two occasions prior to the time he completed Parker Drilling's medical questionnaire; (2) had been fired from LeTourneau for falsely reporting an on-the-job accident, filing a false accident claim, and denying that he had suffered from prior "Back Trouble" on LeTourneau's employment medical questionnaire; and (3) misstated during his deposition that he had not sought medical care while working at LeTourneau. These facts—which show that Brown had sustained back

5

injuries prior to completing Parker Drilling's medical questionnaire, that Brown knew at the time he completed the questionnaire that these injuries constituted "back trouble" in the eyes of a past employer, and that Brown habitually denied his prior injuries—were established by Parker Drilling at trial. The jury nonetheless found that Brown had not intended to conceal his medical condition from Parker Drilling, and the district judge upheld this finding.

Brown now offers two explanations for the jury's finding that he did not intentionally conceal his medical condition. First, he alleges that the question at issue on the Parker Drilling medical questionnaire is compound. Second, he argues that he did not understand the definition of "trouble." Both arguments fail.

a. *Compound question*

As stated *supra*, the question at issue on Parker Drilling's medical questionnaire asked whether Brown had "Past or Present Back *and* Neck Trouble" (emphasis added). Brown points out that this question is compound, and argues that a prospective employee could answer it in the affirmative only if he had suffered from *both* back and neck trouble.[7]

Brown's argument is not well taken. Because Brown did not raise this point before the district court or the jury, it is waived on appeal. *See, e.g., Greenberg v. Crossroads Sys.*, 364 F.3d 657, 669 (5th Cir. 2004). The briefs cite no testimony to show that Brown in fact interpreted the question to be compound, and Brown points to none. The jury could not have rationally inferred that

_____

[7] While the question is compound, the manner in which it is set forth on the questionnaire, and Brown's responses, belie Brown's assertion that he treated it as a compound question. The questionnaire asks: "Have you had or do you now have any of the following? If so, what and when?" It then lists a variety of conditions, and a space to check "Y" or "N". The item at issue in this case occupies two lines on the questionnaire. The first line reads: "Past or Present Back and"; the second line reads: "Neck Trouble". Brown checked the "N" box for each line.

Brown did not lie on the questionnaire because the question was compound, and the district court did not uphold the jury's finding on this basis. Brown's response to the question amounted to intentional concealment of his medical condition.

b. *Brown did not know his injuries constituted "trouble"*

To further support his claim that he did not intend to conceal his medical condition from Parker Drilling, Brown alleges that he did not understand that his back injuries constituted back "trouble." He states that he instead interpreted "trouble" to indicate serious injuries such as a broken back or neck.

When questioned at trial about his appointments with Dr. Johnston that preceded his employment with Parker Drilling, Brown explained that he had been treated for a "sore back" and a "pulled muscle":

> Q. Were you having any type of *back trouble* when you filled out the Parker Application?
>
> A. I just had that pulled muscle, you know. They scanned me about that right now, so I guess I had to say I had a back pulled muscle. It's *back troubles*, they said.
>
> Q. What did you think when you read on the application "Had you ever had back trouble," what came to your mind?
>
> A. Disc and all of that, you know, broke back, a disc, neck being broke or something, the injury is a real one instead of a pulled muscle.

Trial Tr. at 109 (emphases added).

Brown acknowledged on cross-examination, however, that he had been fired from his job at LeTourneau for his back trouble:

> Q. Why were you fired from LeTourneau?
>
> A. For my *back trouble*.

7

*Id.* at 118 (emphasis added).

This admission demonstrates that Brown recognized, only two months before he completed the Parker Drilling medical questionnaire, that his minor injuries, *i.e.*, pulled muscles and back strains, rose to the level of "back trouble" in the eyes of a past employer. Nonetheless, the district court observed that Brown was "a former special education student who exhibited a non-confrontational demeanor at trial [and] was subjected to rigorous cross-examination and . . . was repeatedly accused by defense counsel of lying." Because the jury may have discounted Brown's trial testimony for these reasons, Brown's characterization of his prior injuries as "trouble" on cross-examination, without more, may have been insufficient to show that Brown knew that he had "back trouble."

Brown's understanding of his prior injury as "trouble," however, was necessarily established by the circumstances surrounding his termination from LeTourneau. Brown was fired for answering "No" on LeTourneau's medical questionnaire when asked whether he had suffered from "back trouble." At trial, Brown testified to the following:

> Q.    And I believe that you had testified earlier that the reason they, at LeTourneau, got rid of you, didn't want you to work there anymore, is because LeTourneau found out about your past; they found out about your lying on the application, or whatever, is that right?
>
> A.    Yes, sir.
>
> Q.    And the reason LeTourneau, Mr. Fant at LeTourneau came to you and said "Hey, we can't have you working here," is because he showed you the employment application where you checked off "No," about prior back problems, right?
>
> A.    Yeah.
>
> Q.    And he said "I can't have anybody working here like that who misrepresents the application," right? He told you that?

A.    Yes.

Trial Tr. at 115–16. Such testimony shows that Brown knew he had been fired from LeTourneau for denying that he had "back trouble," and renders implausible Brown's explanation that, two months later, he did not understand the definition of "trouble" on Parker Drilling's medical questionnaire.

We disagree with the argument in the dissent on rehearing that this case turns on the jury's impressions of Brown's credibility. Judge Stewart's dissent on rehearing quotes *McCorpen*'s requirement that a shipowner must "persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance," 396 F.2d at 549, to support the proposition that whether Brown intentionally concealed his back problems was an issue of credibility, which should have been left to the fact-finder. The above-quoted language is inapposite; it applies to a situation where the employer does not require a preemployment health questionnaire. The entire passage in *McCorpen* reads:

> Where the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance. If the shipowner is unable to persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance, he will be liable for maintenance. He will be liable if it is found that there existed reasonable grounds for the seaman's good-faith belief that he was fit for duty.

*Id.* at 548–49. This Court continued in *McCorpen*: "On the other hand, where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *Id.* at 549.

In his order denying Parker Drilling's motion for judgment as a matter of law, the district judge wrote:

9

> [W]hether or not the plaintiff intended to misrepresent or conceal material medical facts was a hotly disputed question of fact at trial. The plaintiff stated that because of the minor nature of the muscle pulls he had experienced in the past, he did not consider any prior back strains or muscle pulls to be "back injuries" when confronted with the question on the Parker employment application. He denied "intentionally concealing" any material medical information. It is apparent that the jury gave credence to his explanation and it rejected Parker's *McCorpen* defense.

*Brown v. Parker Drilling Offshore Corp.*, No. 03-30782, 2003 U.S. Dist. LEXIS 13560, at *10–11 (E.D. La. July 30, 2003).

However, Parker Drilling established as a matter of law that Brown knowingly concealed material medical information. While the dissent on rehearing argues that intentional concealment can never be a matter of law, we do not adopt this interpretation of *McCorpen*'s intentional concealment prong. Rather, we agree with the Court of Appeals for the Ninth Circuit that "[t]he 'intentional concealment' element does not require a finding of subjective intent." *Vitcovich v. Ocean Rover O.N.*, No. 94-35047, 1997 U.S. App. LEXIS 724, at *10 (9th Cir. Jan. 8, 1997) (unpublished opinion). The *Vitcovich* court continued:

> Rather, it refers to the rule that a seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the "intentional concealment" requirement.

*Id.* at *10 (citation omitted). *See also Evans v. Blidberg Rothchild Co.*, 382 F.2d 637, 640 (4th Cir. 1967) (reversing judgment for maintenance, holding that the seaman "made two misstatements of fact which materially affected his eligibility for employment with the shipowner" and finding "deliberate misrepresentation").

The view that the intentional concealment prong of *McCorpen* is an essentially objective inquiry has also been adopted by courts in this circuit. For example, *Caulfield v. Kathryn Rae*

10

*Towing*, 1989 A.M.C. 1769 (E.D. La. 1989), involved similar facts and legal issues. In spite of the plaintiff's insistence "that a factual dispute exist[ed] regarding whether he concealed or misrepresented medical facts," the district judge correctly concluded that the "plaintiff knew that the information on the application was not correct," because he "suffered a previous on-the-job injury to his back . . . ." *Id.* Finding that the plaintiff intentionally misrepresented his medical history, the district judge summarily dismissed the claim for maintenance and cure. *See also Bud's Boat Rental, Inc. v. Wiggins*, No. 91-2317 c/w 91-3507, 1992 U.S. Dist. LEXIS 13094, at *4 (E.D. La. Aug. 24, 1992) (finding t hat no genuine issue of material fact was in dispute because the claimant "plainly concealed his past history" of back trouble even though he denied having intentionally withheld information); *In re L.S.K. Towing, Inc.*, No. 94-4134, 1995 U.S. Dist. LEXIS 7971 (E.D. La. Jun. 5, 1995) (granting summary judgment on finding that claimant concealed medical information, even though the plaintiff argued that a factual dispute existed as to his intent to conceal the pertinent facts).

The language of *McCorpen* lends itself to the objective interpretation of intentional concealment:

> [The] applicant's medical history was solicited by the shipowner through a questionnaire. Thus, the issue for us is not whether McCorpen believed in good faith he was fit for duty but whether he was guilty of the kind of intentional concealment of a disabling illness that precludes an award of maintenance. Tested by this standard, his case is not so strong: In completing a form that was obviously designed to elicit information about past illnesses of importance, appellant failed to reveal his [medical condition] . . . .

*McCorpen*, 396 F.2d at 549.

As noted by other courts, the *McCorpen* test is less subjective, *i.e.*, less reliant on determinations of a seaman's credibility, than other Circuits' comparable tests. The Court of Appeals for the Eighth Circuit, in adopting the *McCorpen* test, noted that it is less subjective than the Second

11

Circuit's test.  *Wactor v. Spartan Transp. Corp.*, 27 F.3d 347, 352 (8th Cir. 1994) (citing *Sammon v. Cent. Gulf S.S. Corp.*, 442 F.2d 1028, 1029 (2d Cir. 1971))  (explaining that the Second Circuit, in *Sammon*, adopted a test allowing a seaman to "claim maintenance and cure for a related injury or illness if he held a good faith belief, at the time he answered the question, that the pre-existing condition or earlier injury was not relevant").  *McCorpen*'s intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination.

Following the dissent on rehearing's reasoning in this case would eviscerate the *McCorpen* defense, which would give rise to undesirable consequences.  Pulling slips on a drilling rig is demanding and potentially dangerous work.  Employers need to be certain that each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees.  This is the purpose of the preemployment health questionnaire, and of the *McCorpen* defense.  Seamen must not be allowed to blatantly misrepresent their medical history on questionnaires and then plead ignorance before a jury.

Parker Drilling established as a matter of law that Brown intentionally concealed his prior back injuries, and the district judge erred in failing to so find in his ruling on the motion for JMOL.

(2)      *Materiality*

The second element of the *McCorpen* defense, materiality, was clearly established at trial. The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis.  Brown's history of back injuries is the exact type of information sought by employers like Parker Drilling.  Brown, by his own admission, realized that information about his back condition had been important to one of his past employers.  Brown's

12

counterargument—that he could perform heavy labor tasks for his first few months on the job—is irrelevant: Parker Drilling based its hiring decision (at least, in part) upon whether applicants had "Past or Present Back and Neck Trouble," not whether they could, on the date of their application, complete difficult manual labor tasks. Parker Drilling has established that Brown's misrepresentation was material to its hiring decision.

(3)    *Causality*

We now turn to whether Parker Drilling met its burden to establish causality, the third prong of the *McCorpen* test. "[C]ase law reflects that even an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained." *Howard v. A.S.W. Well Serv. Inc.*, No. 89-2455-L, 1991 U.S. Dist. LEXIS 21156, at *4 (W.D. La. Dec. 6, 1991). We hold that Parker Drilling did demonstrate the existence of such a connection between Brown's preexisting injury and his injury giving rise to this lawsuit.[8]

The evidence established that Brown suffered a lumbar strain in 1998 and 2000, with possible disc herniation, at L-4/L-5 and L-5/S-1. Dr. Dona, Brown's expert witness, acknowledged that Brown's prior back strains were to the same lumbar-spine region as his current back problem. Brown argues that Parker Drilling has not established causality because there is no proof that he suffered a

_____

[8] We note that the jury made no specific finding on causation, but only considered causation together with the entire *McCorpen* defense. That is, they answered "no" to the compound question: "Do you find . . . that Rickey Brown[] intentionally misrepresented or concealed material medical facts during his pre-employment examination and interview process, and that the facts which were concealed were causally linked to the injuries he suffered . . . ?" We also note that the district judge, in denying Parker Drilling's motion for JMOL on the *McCorpen* defense, did not reach the causation issue, because he found that Parker Drilling had not established intentional concealment.

previous disc herniation, and points out that nowhere in the reports of Dr. Mimeles and Dr. Applebaum is there any indication that Brown's herniated disc preexisted his employment with Parker Drilling. The dissent on rehearing echoes this argument, maintaining that "there was no evidence presented to conclusively show that Brown sustained the herniated disc prior to the incident at Parker." This position is without merit because Parker Drilling need not prove that the prior injuries are the sole causes of the herniation. It need only show a *causal relationship* between the prior injuries and the herniation. "[T]here is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 236 (D. Haw. 1990) (citing *McCorpen*, 396 F.2d at 549.) Because Brown's injuries were to the same location of the lumbar spine, the causal link between the concealed information and the new injury was established at trial.

Courts in this Circuit have routinely found such a causal link in similar circumstances. In *Weatherford v. Nabors Offshore Corp.*, No. 03-0478, 2004 U.S. Dist. LEXIS 3435 (E.D. La. Mar. 1, 2004), the district court granted summary judgment for the defendant, holding that the claimant was not entitled to maintenance and cure as a matter of law, because "[w]here plaintiff claims an injury in the exact same area of the back as was previously injured, the causal connection is clear." *Id*. at *7. *See also Fox v. Plaquemines Parish Gov't*, No. 99-748, 1999 U.S. Dist. LEXIS 19544, at *7 (E.D. La. Dec. 17, 1999) (granting summary judgment against claimant on maintenance and cure claim, when defendant showed that the claimant's prior and present back problems both involved lower back injuries involving the L5-S1 disc); *Guillory v. Northbank Towing Corp.*, No. 92-0140, 1993 U.S. Dist. LEXIS 21338, at *8 (W.D. La. June 26, 1993) (granting summary judgment for

14

defendant, holding that plaintiff's maintenance and cure claim is "for the exact same area of the back, at the L4-L5 level . . . . Therefore, there clearly is a causal connection and materiality between and of that which was concealed and his present medical condition."); *Keys v. Halliburton Co.*, No. 88-1523, 1989 U.S. Dist. LEXIS 5558, at *9–10 (E.D. La. May 18, 1989) (granting the defendant's summary judgment motion on issue of its obligation to pay maintenance and cure benefits to the plaintiff, holding that "both injuries at issue were medical injuries affecting the low back").[9]

In sum, Parker Drilling mounted a successful *McCorpen* defense. It established Brown's intent to conceal his medical condition, that the nondisclosed facts were material to its decision to hire Brown, and that a connection existed between the withheld information and the injury complained of in the lawsuit. We therefore reverse the district court's decision denying Parker Drilling's motion for JMOL on whether Brown is entitled to maintenance and cure benefits, which voids the jury's determination of this issue.

(4)     *Parker Drilling's withholding of maintenance and cure benefits*

---

[9] Cases where courts did not find a causal link are distinguishable on their facts. In *Parker v. Noble Drilling Corp.*, No. 98-1196, 1999 U.S. Dist. LEXIS 2069 (E.D. La. Feb. 19, 1999), the district court denied the employer's motion for summary judgment, holding that the employer had "not shown that the injury that caused [the claimant's] prior back pain also caused the injuries he suffered on board the [vessel]." *Id*. at *5. In that case, however, the employer failed to demonstrate that the claimant in fact suffered from a preexisting condition or disability. It merely showed that the claimant "complained of back pain on a prior occasion." *Id*. at *6. The court held that this showing was not sufficient to prove that the current injuries were "caused by a pre-existing condition." *Id*. In *Olympic Marine Co. v. Credeur*, No. 92-2062, 1992 U.S. Dist. LEXIS 17353, at *6–8 (E.D. La. Nov. 12, 1992), the district court held that a question of fact existed regarding whether the claimant's current injury was in any way caused by his previous accidents. In that case, however, the employer had failed to show that the claimant's preexisting disability was "identical or similar," and there was "no evidence" of a "previous similar diagnosis." *Id*. at *7–8.

Parker Drilling contends that the jury clearly erred by finding that Brown acted unreasonably in withholding Brown's maintenance and cure benefits. This Court has recognized that

> there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. *If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages.* If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.

*Morales*, 829 F.2d at 1358 (emphasis added).

Parker Drilling offers two explanations for its failure to pay maintenance and cure: (1) Brown willfully concealed his prior medical condition, and (2) Brown's injury was not sustained on Parker Drilling's vessel. The question before us is whether the judge erred in upholding the jury's finding that Parker Drilling's reliance on these explanations was unreasonable.[10]

We hold that the judge erred in upholding the jury's finding that it was unreasonable for Parker Drilling to withhold benefits because Parker Drilling's refusal was based on a reasonable defense: that Brown had willfully concealed his medical condition. The jury could not rationally have determined that Parker Drilling was unreasonable in relying on this defense, so their finding constitutes clear error. Accordingly, we need not reach Parker Drilling's second explanation for withholding benefits.

---

[10] Parker Drilling points out that Brown did not even seek attorney's fees, and thus "Parker's actions were not attacked as arbitrary and capricious by Brown." This fact, while true, is irrelevant to the issue before this Court. Compensatory damages do not turn upon the employer's arbitrariness and capriciousness, but rather upon the employer's unreasonableness. *See Morales v. Garijak,* Inc., 829 F.2d 1355, 1358 (5th Cir. 1987) ("If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees."). Because one who acts merely unreasonably is less culpable than one who acts arbitrarily and capriciously, the fact that Brown did not seek attorney's fees is beside the point.

16

**B. Does the Jones Act negligence verdict survive the *McCorpen* defense?**

Brown argues in his petition for rehearing that the panel's decision improperly dismissed his Jones Act negligence claim based on the *McCorpen* defense. Parker Drilling argues in response that because Brown lied on the employment questionnaire, he was not eligible to sue for negligence under the Jones Act. Parker Drilling's argument proceeds from the uncontroverted premise that "[t]he employer-employee relationship is an absolute prerequisite to Jones Act liability." *Reed v. Iowa Marine & Repair Corp.*, No. 90-4971, 1992 U.S. Dist. LEXIS 12200, *8–9 (E.D. La. Aug. 12, 1992) (citing *Stamoulos v. Howland Panama S.A.*, 610 F. Supp. 454, 456 (E.D. La. 1985)), *rev'd on other grounds*, 16 F.3d 82 (5th Cir. 1994). If Brown was not in a valid employment relationship with Parker Drilling because of his misrepresentations on the medical questionnaire, he is not eligible to recover damages under the Jones Act, according to *Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.v. Rock*, 279 U.S. 410 (1929).

In *Rock*, the Supreme Court barred a railway worker from suing under the Federal Employers' Liability Act ("FELA") because he fraudulently substituted a stand-in for his preemployment physical exam. Jones Act cases follow cases under the FELA. *See, e.g., Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 989 (9th Cir. 1987). However, the Supreme Court has effectively overruled *Rock*. In *Still v. Norfolk & Western Railway Co.*, the Supreme Court clarified that even an employee who obtains his employment through fraud is considered an employee for purposes of the Jones Act. 368 U.S. 35, 44–46 (1961) (holding that even "employees who become such through other kinds of fraud, although possibly subject to termination through rescission of the contract of employment, must be recognized for purposes of suits under the" FELA, and thus the Jones Act); *see also Reed*, 1992 U.S.

17

Dist. LEXIS 12200, at *9 ("[T]he Supreme Court has effectively foreclosed any argument that misrepresentations in an application for employment might void the necessary employment relation.").

Notwithstanding Brown's misrepresentations on the health questionnaire, he was in an employment relationship with Parker Drilling for purposes of a Jones Act negligence claim. *See, e.g., Omar*, 813 F.2d at 989; *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 529–31 (9th Cir. 1962).

Because the Jones Act negligence verdict is viable, we must now consider Parker Drilling's arguments that the district court abused its discretion when it charged the jury to reconcile its inconsistent verdict and that Brown's counsel's invocation of the Golden Rule argument tainted the jury verdict such that a new trial is warranted.

## C. Did the district court abuse its discretion when it charged the jury to reconcile its inconsistent verdict?

The jury's verdict for Jones Act negligence was inconsistent in that it awarded Brown special damages but not general damages.[11] The judge immediately instructed the jury to remedy this error, explaining that "if you decide that future medical expenses are going to be incurred as a result of that accident, you must award something for pain and suffering." Parker Drilling argued in its motion for judgment as a matter of law and, alternatively, for a new trial, that the district court erroneously charged the jury on how to reconcile its inconsistent verdict. The district court denied the motion, but did grant Parker Drilling's motion for remittitur and entered judgment against Parker Drilling for $414,840. Parker Drilling renewed its objection to the district court's instructions to the jury on appeal.

---

[11] In *Yarborough v. Sturm, Ruger & Co.*, this Court observed that "[i]t is inconceivable that the jury could find liability and then award damages for past but not future disfigurement, for past and future medical expenses but not for past and future pain and suffering." 964 F.2d 376, 379 (5th Cir. 1992).

Challenges to jury instructions are reviewed for abuse of discretion. *C P Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 700 (5th Cir. 2001). A judgment should be reversed "only if the charge as a whole creates a substantial doubt as to whether the jury has been properly guided in its deliberations." *Id*.

Parker Drilling contends that the district court's instruction to reconcile the jury's inconsistent verdict constituted an abuse of discretion. Specifically, Parker Drilling argues that the district court's "instruction [to redeliberate] essentially abrogated the jury's stated will and intent" to reconsider both special and general damages. Parker Drilling relies on two issues regarding the quantum of the award in attempting to show that the district judge's instruction abrogated the jury's intent to recalculate special damages during its redeliberation.

First, Parker Drilling asks this Court to consider a statement by the jury on a questionnaire form separate from the verdict form that it "wanted to award [Brown] $425,000." During redeliberation following the judge's instructions, the jury increased its award to $525,000. Second, Parker Drilling argues that the fact that the jury did not adopt *in toto* one of the parties' economic experts' calculations of damages is evidence that it had derived its $425,000 award from a consideration of the totality of the evidence. Had the jury been instructed to reconsider all special and general damages, argues Parker Drilling, it could have readjusted the entire verdict to award something for general damages but to stay within the $425,000 it originally wanted to award.

These arguments fail because the initial figure on the questionnaire was calculated during the jury's original deliberation, when the jury was apparently unaware of its legal obligation to award general damages once it had awarded special damages. That the jury gave a higher award after receiving proper instruction on the law is not evidence that the district judge abrogated the jury's

19

intent. The district judge's instruction did not prohibit the jury from making any adjustments to the verdict it wished, provided it remedied the inconsistency. The jury was free to readjust its award to total $425,000, had it so desired.

Parker Drilling's argument regarding the district court's instruction on redeliberation fails because the district court instructed the jury that "if" it awarded special damages, then it must award general damages. Further, the judge offered the jury a new, blank set of interrogatories to complete during its redeliberation and instructed the jury to "look at the instructions," which expressly stated that general damages must be awarded *if* special damages are awarded. It was clear to the jury that it was free to reconsider both special and general damages. It is settled law in this Circuit that "mere resubmission does not necessarily coerce a verdict." *Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir. 1988). Because the district judge did not abuse his discretion, we affirm the district court's denial of a new trial on this issue.

## D. Did the invocation of the Golden Rule by Brown's counsel taint the jury verdict such that a new trial is warranted?

During closing arguments, Brown's counsel remarked to the jury:

This is an emotional injury. This twenty-three year old needs a back fusion. He will go through pain and suffering. He will go through emotional issues, you can fairly compensate him for that. We're not asking for sympathy here. I want you to close your eyes when you go in the back, please, and put yourself on a rig as a twenty-one year old making $37,000 a year.

Parker Drilling objected that counsel's invocation of the "Golden Rule," *i.e.*, asking the jurors to stand in the shoes of a party, was improper. The district court sustained the objection, and later instructed the jury to "not let bias, prejudice or sympathy play any part in your deliberations." Parker Drilling did not object to this instruction or request that the district court specifically instruct the jury to disregard plaintiff counsel's invocation of the Golden Rule. Parker Drilling contends on appeal that

20

the Court should order a new trial on the ground that Brown's counsel improperly invoked the Golden Rule during its closing argument.

We review the district judge's actions surrounding Brown's counsel's invocation of the Golden Rule for abuse of discretion. *Har-Pen Truck Lines, Inc. v. Mills*, 378 F.2d 705, 715 (5th Cir. 1967). A plea to the jury members to "put themselves in the shoes of the plaintiff and do unto him as they would have done unto them under similar circumstances . . . [is] improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than the evidence." *Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978)). Even if counsel does not explicitly invoke the Golden Rule but merely invites the jury to place themselves in the position of the plaintiff, the result is effectively the same and the risk of taint is no different. *Whitehead v. Food Max of Miss. Inc.*, 163 F.3d 265, 278 (5th Cir. 1998). Any reasonable interpretation of the language used by Brown's counsel indicates that the Golden Rule was invoked.

Even if a party does invoke the Golden Rule, however, a new trial is warranted only if the opposing party shows that it was sufficiently prejudiced considering all the facts and circumstances of the case. *United States v. Jefferson*, 258 F.3d 405, 412 (5th Cir. 2001). Parker Drilling claims that the jury's deliberations were tainted by the district judge's failure to expressly *admonish* Brown's counsel for employing the Golden Rule. To support this claim, Parker Drilling quotes this Court's statement in *Loose v. Offshore Navigation, Inc.* that "[t]he use of such a 'Golden Rule' argument so taints a verdict as to be grounds for a new trial." 670 F.2d 493, 496 (5th Cir. 1982). The trial judge in *Loose*, however, had *overruled* the objection to counsel's use of the Golden Rule. *Id.* Moreover, this Court in *Loose* further underscored that "[t]he invocation of the Golden Rule does not create

21

immutable error. The trial judge may, by appropriate instruction, salve the suit." *Id.* at 497; *see also Har-Pen*, 378 F.2d at 714 ("The best that can be done when the suggestion is made is for the court to indicate . . . the legal impropriety of the notion."); *Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (concluding that because counsel did not refer to the improper hypothetical after the objection and because the trial court instructed the jury on its proper role, the complaining party was not prejudiced).

Parker Drilling's objection was sustained, Brown's counsel immediately abandoned this line of argument, and the district court expressly instructed the jury not to sympathize with the plaintiff. Parker Drilling has failed to establish that it was sufficiently prejudiced by Brown's invocation of the Golden Rule, and a new trial is not warranted.

## III. CONCLUSION

Because the district judge's denial of the motion for JMOL regarding the maintenance and cure claims was erroneous, we hereby vacate the jury verdict as to the maintenance and cure award.

The prior majority opinion dismissing Brown's Jones Act negligence award was erroneous; accordingly, that award is REINSTATED. The district court's denial of the motion for a new trial on the bases of erroneous jury instructions regarding reconciling the inconsistent verdict and Brown's counsel's invocation of the Golden Rule, is AFFIRMED.

CARL E. STEWART, Circuit Judge, concurs in part and dissents in part.

I concur in the panel majority's decision affirming: (1) the Jones Act verdict in favor of Brown; (2) the denial of Parker Drilling's motion for new trial claiming that the trial judge improperly charged the jury in its attempt to remedy the inconsistent verdict; and (3) the denial of Parker Drilling's motion for new trial claiming that it was prejudiced by Brown's counsel's invocation of the

22

Golden Rule. Regarding the majority's reversal of Brown's maintenance and cure verdict, I continue to dissent.

The initial majority opinion appearing at 396 F.3d 619 (5th Cir. 2005), completely substituted its credibility determinations for those of the jury in this case in an effort to rescue the shipowner from what the majority considered to be a legally deficient jury verdict. On rehearing, the majority strains to characterize this case as one which principally turns on the resolution of an objective issue of law and not on credibility, a traditional jury province, as the trial judge saw it and as I saw it after reading the trial record.

A close examination of the cases the majority cites in its opinion on rehearing shows that the cases are an assortment of appeals of summary judgment rulings, bench trial rulings and, for the most part, cases where the facts involved were significantly more egregious than the facts and circumstances presented to the jury in this case. For the reasons that I shall reiterate, Brown v. Parker Drilling was a hard fought, quintessential jury trial, presided over by a highly attentive trial judge. This case was not difficult for this citizen jury to understand. It was not a multiple party case requiring sophisticated organizational charts to explain for the jury the relative interests of the parties in the case, it required no complex federal statutory interpretation to guide its decision making, it involved no compound contractual entanglements between the parties requiring the jury to decipher reams of paper presented to it by each party, it involved no overlapping principal claims and cross claims tethered to a labyrinth of legal principles and theories. Neither the trial judge's denial of Parker Drilling's Motion for Judgment as a Matter of Law, nor the jury's verdict on the maintenance and cure issue should be reversed by the hindsight of this appellate court.

23

Following a three-day jury trial in this hotly contested maintenance and cure lawsuit, the jury deliberated for five hours over all the competing claims of the parties and then returned a verdict in favor of Brown in the amount of $150,000. Having remitted the verdict to $100,000, the trial court fully discussed the facts and law pertaining to Parker Drilling's post-trial motions and then denied them. Despite this context, the panel majority sifts through the evidence, essentially declares Brown to be unworthy of belief by the jury, and then substitutes its appellate judgment for that of the jury. The majority discards the plaintiff's verdict and summarily renders a substitute verdict for Parker Drilling, the employer. Because I decline to participate in the majority's usurpation of the jury's function, I respectfully dissent.

The majority anchors its analysis on McCorpen v. Central Gulf Steamship Corp., 396 F.2d. 547 (5th Cir. 1968). I have no quarrel with Parker Drilling's right to assert a wilful concealment defense in this case. However, McCorpen also provided that, "[i]f the shipowner is unable to persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance, he will be liable for maintenance." 396 F.2d. at 549; see also Springboard v. Am. Commercial Barge Lines, Inc., 767 F.2d 89, 94-95 (5th Cir. 1985); Guevara v. Maritime Overseas Corp., 34 F.3d 1279, 1281 (5th Cir. 1994) (stating that "the standard of review in a Jones Act case is highly deferential"). Brown testified, and his trial counsel presented evidence, that Brown did not consider his prior injuries to be "back problems" within the meaning of Parker Drilling's employment application, but instead considered his prior injuries mere muscle pulls. Thus, the question whether Brown "fraudulently" concealed prior "back problems," within the meaning of Parker Drilling's employment application was, in this instance, one of credibility. Questions of

24

credibility should properly be left to the fact-finder. See e.g., Polanco v. City of Austin, Tex., 78 F.3d 968. 976-77 (5th Cir. 1996).

On appeal, Parker Drilling contests the district court's rulings on its post-judgment motion for judgment as a matter of law, or in the alternative, motion for new trial, or for remittitur. The panel majority's reversal of the jury's verdict here is tantamount to a judgment as matter of law, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. "A motion for judgment as a matter of law . . . in an action tried by jury is [, in essence,] a challenge to the legal sufficiency of the evidence supporting the jury's verdict." Hiltgen v. Sumrall, 47 F.3d 695, 699 (5th Cir. 1995). Review under Rule 50(a) of a trial court's denial of a motion for judgment as a matter of law is *de novo*. This court must apply the same standard the district court used when it first considered the motion, on the first pass. Hiltgen, 47 F.3d at 699. Thus, we will uphold a jury verdict unless "there is no legally sufficient evidentiary basis for a reasonable jury to find" as it did. FED. R. CIV. P. 50(a). "Ambiguities and doubts are to be resolved in favor of the seaman." Springborn, 767 F.2d at 94 . To show deference to a jury's decision, this court has consistently stated that,

[a] jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict.

On appeal, we are bound to view the evidence and all reasonable inferences *in the light most favorable to the jury's determination*. Even though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses. We must not

25

substitute for the jury's reasonable factual inferences other inferences that we may

regard as more reasonable.

Rideau v. Parkem Indus. Services, Inc., 917 F.2d 892, 897 (5th Cir. 1990) (citations and quotations

omitted) (emphasis supplied).[12]

Despite the fact that a seaman's right to maintenance and cure is "very broad" and "rarely

withheld," see, e.g, Wactor v. Spartan Trans. Corp., 27 F.3d 347, 352 (8th Cir. 1994), that right is

not without its limitations. McCorpen, 396 F.2d at 549. The majority correctly points out that in

order to deny Brown's maintenance and cure claim, Parker Drilling is entitled to rely on the

McCorpen defense that Brown "willfully concealed" a preexisting medical condition. Id. (noting that,

"where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview

[, as in the instant case,] and the seaman intentionally misrepresents or conceals material medical

facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and

---

[12] Although the panel majority does not elaborate on the historic nature of maintenance and cure, especially as it relates to the doctrine being favorable to seamen, there is no difference in its understanding of maintenance and cure and mine. "Maintenance" and "cure" is a contractual form of compensation provided under general maritime law to seaman who become ill or injured while in the service of their ship. McCorpen, 396 F.2d at 548. See also M. Norris, 2 The Law of Seaman § 26: 2, at 3 (4th ed. 1985); accord Brister v. AWI, Inc., 946 F.2d 350, 360 (5th Cir. 1991). An employer's duty to pay maintenance and cure is not dependent on the employer's or the seaman's negligence; but rather, maintenance and cure is a seaman's right implied in the relationship between the seaman and the owner of the vessel. Brister, 946 F.2d at 360; see also Bertram v. Freeport McMoran, 35 F.3d 1008, 1012 (5th Cir. 1994). "Thus, an owner of a vessel is almost automatically liable for the cost of medical treatment and basic living expenses when a seaman in its employ is injured." Brister, 946 F.2d at 360; see also Charpentier v. Blue Streak Offshore, Inc., 1997 WL 426093, at *8 (E.D. La.) (stating that "[m]aintenance and cure are available even where a seaman has a longstanding illness which does not manifest itself until some point during his employment on a vessel, even if that employment is not responsible for causing the illness to appear or worsen") (footnotes omitted). Indeed, the Supreme Court has stated that "when there are ambiguities or doubts [as to a seaman's right to maintenance and cure], they are to be resolved in favor of the seaman." Vaughn v. Atkinson, 369 U.S. 527, 532 (1962); accord Gaspard v. Taylor Diving & Salvage Co., Inc., 649 F.2d 372, 374 n.2 (5th Cir. Jul. 1981).

cure"). As the majority notes, in order to prove that Brown "willfully concealed" a preexisting medical condition, Parker Drilling must establish that, (1) Brown intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit. Id. at 548-49. My review of the record reveals that substantial evidence was presented at the trial for the jury to consider elements one and three of the McCorpen defense. As the shipowner, Parker Drilling had the burden of persuading "the court or the jury" that the complaining seaman was not entitled to an award of maintenance and cure. Id. The jury and the district court in the instant case were, both, unpersuaded by Parker Drilling's contention that Brown attempted to "intentionally" defraud it.

At trial, Brown brought five claims against Parker Drilling: (1) negligence under the Jones Act, (2) unseaworthiness under general maritime law, (3) retaliatory discharge, (4) maintenance and cure, and (5) unreasonable failure to pay maintenance and cure. After five hours of deliberation, the jury returned a verdict in favor of Brown on three of the five claims: negligence under the Jones Act, maintenance and cure, and unreasonable failure to pay maintenance and cure. The jury found in favor of Parker Drilling on the two remaining claims of unseaworthiness and retaliatory discharge. On the claim for negligence under the Jones Act, the jury apportioned fault, finding Brown 75% at fault and Parker Drilling 25% at fault. Judgment was entered in favor of Brown on May 28, 2003. Parker Drilling filed a Motion for Judgment as a Matter of Law, or in the Alternative, a Motion for a New Trial, or a Motion for a Remittitur. The district court considered the matter under the appropriate standard articulated under Rule 50(a). The district court first considered the evidence under the standard for a motion for judgment as a matter of law. Thus, the trial judge evaluated the facts to

27

determine whether, after drawing all reasonable inferences in favor of Brown, there was a legally sufficient basis for a reasonable jury to find in favor of Brown. The district court then considered Parker Drilling's Motion for a New Trial. After weighing all the evidence anew, the district court concluded that the jury's verdict was not against the great weight of the evidence. The district court cogently articulated in its order and reasons its explanation for denying the motion for judgment as a matter of law and the motion for a new trial. These reasons are based on detailed and careful analysis of the trial and supported by substantial facts in the record. The court observed:

> Contrary to the defendant's characterization of the plaintiff's testimony, whether or not the plaintiff **intended** [sic] to misrepresent or conceal material medical facts was a hotly disputed question of fact at trial. The plaintiff stated that because of the minor nature of the muscle pulls he had experienced in the past, he did not consider any prior back strains or muscle pulls to be "back injuries" when confronted with the question on the Parker employment application. He denied "intentionally concealing" any material medical information. It is apparent that the jury gave credence to his explanation and it rejected Parker's <u>McCorpen</u> defense.

> Viewing the evidence in the light most favorable to the non-moving party, the Court also finds that the plaintiff did offer substantial evidence supporting his Jones Act and maintenance and cure claims. Brown was, in fact, employed as a Jones Act seaman on the day of the accident on Parker's drilling vessel. Plaintiff testified that he was engaged in pulling slips on the rig floor when the slips stuck in the master bushing, causing them to rise from the drill floor and then suddenly drop, abruptly

28

jerking the plaintiff and causing injury to his back. He reported the accident in a timely manner and he was placed on light duty.

Other evidence was presented which corroborates plaintiff's claim. There was testimony that the master bushing should have been greased to prevent it from sticking, that plaintiff had never actually been instructed to grease the master bushing, that under normal circumstances the master bushing should not rise from the drill floor, that Brown was an excellent employee during the six months prior to the accident that he worked for Parker, and that Brown had never exhibited back pain or a back injury prior to the accident. Plaintiff's drilling procedures expert, Mr. Kubelka, testified that the plaintiff was not properly trained and that the equipment in use on the Parker rig was not functioning properly. In addition, there was uncontradicted medical evidence that plaintiff does have a herniated disc in his lumbar region.

Parker's entire argument in favor of its motion for judgment as a matter of law is based upon its interpretation of the evidence in the light most favorable to its case, relying almost exclusively on its own credibility determinations. As noted above, however, in deciding a motion for judgment as a matter of law, the district court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. . . . "[I]t is the function of the jury as the traditional finder of facts, not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Delano-Pyle v. Victoria

County, Texas, 302 F.3d 567, 572 (5th Cir. 2002), *quoting* McArthur v. Univ. of Tex. Health Ctr. at Tyler, 45 F.3d 890, 896 (5th Cir. 1995) (citation omitted). As noted, the district court's task is to determine if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict, disregarding evidence favorable to the moving party that the jury is not required to believe. Id. (sic) Applying this stringent standard, the Court finds that the defendant's motion for judgment as a matter of law is without merit.

> . . . .

> With respect to the defendant's motion for a new trial on the Jones Act negligence and entitlement to maintenance and cure claims, for reasons previously stated, the motion is without merit.

This recitation by the trial judge alone is sufficient to demonstrate there was a lawful evidentiary basis for the district court to reasonably uphold the jury's verdict. Accordingly, our court is required to remain "mindful that, in light of the seventh amendment guarantee of the right to jury trial, . . . [this court has a duty to] proceed cautiously, and . . . [should] validate the jury verdict if at all possible." Gaspard, 649 F.2d at 374 n.2. This record indicates that it is clearly possible to validate this verdict.

Notwithstanding the district court's conclusion, my review of the record, taken in the light most favorable to Brown, also finds substantial evidence to permit a reasonable jury to reject Parker Drilling's McCorpen defense. From the inception of opening statements to the final words of closing arguments, the salient facts of this case were fiercely debated. In opening statements, Brown's trial

30

counsel delineated a succinct time line of Brown's first two injuries, leading up to the injury Brown alleges he sustained in the course of his employ at Parker Drilling: In 1998, Brown was treated in an emergency room in Vicksburg, Mississippi for what he claims was a pulled muscle resulting from the lifting of an ice chest filled with one hundred pounds of corn. At the time of the first injury, Brown was seventeen years old and still in high school. Brown's x-rays were inconclusive as to whether he had a herniated disc. Still reeling from the pain, Brown visited his family physician, Dr. Johnston, five days later. In May of 1999, Brown graduated from high school. Brown testified that between the time of the first injury and the time of the second injury, he suffered no pain with his back. In August of 1999, Brown took a job with LeTourneau, Inc., a company at a shipyard that builds offshore drilling rigs. At LeTourneau, Brown was employed as a welder. Similar to what Brown would later encounter in Parker Drilling's employment application, LeTourneau's employment application contained a questionnaire inquiring whether Brown suffered, at that time, or in his past, "back problems." Brown did not inform LeTourneau of the incident with the corn, but testified that he failed to do so, only because he did not believe his prior injury constituted "back problems," within the meaning of LeTourneau's application. The evidence reveals that Brown continued to work for LeTourneau from August of 1999 until June of 2000, and that between that time, Brown suffered no pain with his back. In June of 2000, however, while lifting a heavy pipe during his employ with LeTourneau, Brown suffered a second injury to his back. Brown again visited Dr. Johnston, and Johnston again concluded that Brown had merely pulled a muscle. Brown was subsequently fired for not informing LeTourneau of the prior back injury. Evidence was presented by Parker Drilling's trial counsel that LeTourneau stated that it terminated Brown because Brown had fabricated the injury and was never actually injured. Parker Drilling even introduced a letter written by Bob Fant, Brown's

31

LeTourneau supervisor, and signed by Brown, attesting to Brown's fabrication of the injury. Brown in rebuttal, however, testified that he signed the statement submitting that he had made up the story, but only did so because he believed it would salvage his job, at that time. Brown suggested that Fant instructed him to sign the letter to keep his job, after Fant learned of Brown's prior injury from Brown's sister. However, when asked by his trial counsel whether he had in fact suffered the second injury, Brown testified that "yes" he had suffered the second injury. When asked how he sustained the second injury, Brown stated that the injury was caused by lifting a piece of heavy pipe during his employ with LeTourneau. Moreover, Parker Drilling's trial counsel asked Brown, during a vigorous cross-examination, whether by not listing his 1998 injury Brown was trying to intentionally deceive LeTourneau. Brown expressly testified that he was not trying to deceive LeTourneau. Brown testified, instead, that he did not list the 1998 injury because he did not consider his prior muscle pull to be deemed "back problems," within the meaning of LeTourneau's employment application.

On August 17, 2000, Brown commenced his employment with Parker Drilling. The evidence reveals that prior to accepting Parker Drilling's offer of employment, Brown was required to fill out an application containing a questionnaire of various inquires. One question, almost identical to LeTourneau's application, inquired whether Brown had suffered or was suffering from "back problems." Again, Brown did not list either the 1998 injury, or the injury he alleges he suffered at LeTourneau. Parker Drilling's trial counsel peppered Brown on cross-examination; Brown never waivered from his story that he did not consider either of his prior injuries to be "back problems," within the meaning of the employment applications. This evidence is only some of the record facts supporting a conclusion that the jury's verdict was supported by a sufficient evidentiary basis.

32

As to the first requirement of the McCorpen defense, i.e., whether Brown intentionally misrepresented or concealed medical facts, Brown and Parker Drilling, using the same time line, both depicted contrasting stories of the events leading up to the injury Brown alleges he sustained in the course of his employ with Parker Drilling. The jury accepted Brown's version of events, and rejected Parker Drilling's. This record clearly demonstrates sufficient evidence, taken in the light most favorable to Brown, to reasonably support the jury's verdict as to this requirement. Brown's trial counsel presented his client as a young and unsophisticated kid who did not fully understand the meaning of his employers' employment applications. Even though Parker Drilling's trial counsel showed inconsistencies in Brown's stories, and specifically depicted Brown as a liar who showed a pattern of fraud and deception by failing to list prior injuries in both LeTourneau's and Parker Drilling's application, Brown offered reasonable explanations for each inconsistency highlighted by Parker Drilling. Parker Drilling's trial counsel even had the benefit of vigorously cross-examining Brown, and yet, the jury still refused to accept Parker Drilling's McCorpen defense.

Indeed, at oral argument before this court, Parker Drilling's appellate counsel acknowledged that their trial counsel skillfully used demonstrative evidence to highlight for the jury the salient points of Brown's testimony. Enlarged copies on "blow ups" were used to illuminate Brown's inconsistent statements and show that Brown was a liar. The jury flatly rejected Parker Drilling's version of the events. On the other hand, the jury was aware of Brown's age, and heard evidence suggesting that Brown had a low level of sophistication. Brown also underwent a rigorous medical physical by Parker Drilling's physician before he was allowed to work. Brown passed the physical examination according to Parker Drilling's standards, and the results of the exam indicated that, at the time Brown commenced employment with Parker Drilling, Brown was in good physical health. It was also

33

possible for the jury to reasonably conclude that Brown did not consider his prior injuries to be "back problems" within the meaning of his employers' applications, thereby negating the notion that Brown intentionally concealed his prior injuries. Contrary to the majority's declaration, the jury in this instance could have reasonably accepted Brown's explanations for not listing his prior injuries on Parker Drilling's employment application, primarily because he did not consider his prior back injuries to be "back problems."

Even were I to accept the majority's contention that the intentional concealment prong of McCorpen is an objective determination, I am still convinced that a reasonable jury could have determined that there was no causal link between Brown's prior back injury/sprain and the impairment for which he sought compensation. Thus, even though the panel majority attempts to establish that the intentional concealment prong was objectively met, the other two required elements were obviously rejected by the jury. Therefore, the majority's reliance on its premise that one of the elements requires an objective determination still falls short of justification for its reversal of the jury verdict.

The third McCorpen requirement, i.e., whether a connection existed between the withheld information and the injury complained of in the lawsuit, could also be fairly considered by the jury. The jury heard experts from both sides vigorously debate the cause of Brown's injury. Evidence was presented that x-rays of Brown's first injury were inconclusive to indicate that Brown suffered a herniated disc. Dr. Johnston testified that when he treated Brown on the two prior occasions, he concluded that Brown had merely suffered a muscle pull. Evidence was also presented by Parker Drilling's own expert neurosurgeons, Dr. Robert Mimeles and Dr. Robert Applebaum, which indicated that after the time Brown alleged he suffered the back injury during his employ with Parker

34

Drilling, Brown in fact had a herniated disc. Moreover, there was no evidence presented to conclusively show that Brown sustained the herniated disc, prior to the incident at Parker Drilling. The jury was entitled to reasonably infer that the herniated disc resulted from the injury Brown sustained while working for Parker Drilling. The McCorpen defense requires a causal link; the jury in this case concluded that Parker Drilling did not establish that a connection existed between Brown's withheld information and the injury Brown alleges he sustained while working for Parker Drilling.

The decisive factor in this case was one of credibility. Parker Drilling's counsel more than sufficiently put the issue of Brown's credibility before the jury. Again, the jury did not accept Parker Drilling's characterization of Brown as a liar. "Credibility is a question [properly left] for the jury." Boyle, 893 F.2d at 716. Indeed, the Supreme Court has perennially instructed appellate courts not to substitute its judgment for that of the jury. See e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (observing that "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor "); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000) (stating that "although the [appellate] court[s] should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe"); Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555 (1999); Continental Ore Co. v. Union Carbide & Corp., 370 U.S. 690, 696-97 n.6 (1962).

Even more telling of the reasonableness of this jury's decision is the fact that the full evidence was weighed–a second time–by the district court who, having the advantage of sitting through the

entire flow of the evidence, prior to, during, and after the trial, also rejected Parker Drilling's characterization of Brown. "When the district court denies a new trial, it ratifies the jury's assessment of the case . . . ." Eximco, Inc. v. Trane Co., 737 F.2d 505, 512 (5th Cir. 1984). Accordingly, "the party who initially persuaded the jury should not be stripped unfairly of a favorable decision." Id. Notwithstanding the panel majority's disclaimers to the contrary, I respectfully suggest that this is precisely what the panel majority is doing in this case. Verdicts based on a jury's fact findings, which appellate courts may not agree with, are rendered across this nation almost everyday, and yet, the verdicts are sustained because appellate courts have a legal duty to uphold such verdicts when the record reveals legally sufficient evidence to so. This court itself has repeatedly observed that, "[o]nly through *live* cross-examination can the fact-finder observe the demeanor of a witness, and assess his credibility. A cold transcript . . . is generally no substitute because it cannot unmask the veracity of a testifying witness clad in a costume of deception; it cannot unveil that a seemingly well-groomed witness is coming apart at the seams: 'that he fidgets when answering critical questions, his eyes shift from the floor to the ceiling, and he manifest all other indicia traditionally attributed to perjurers.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1265-66 (5th Cir. 1991) (quoting Anderson, 477 U.S. at 269-70) (emphasis in the original).

In sum, this case will never be particularly noteworthy for the maritime law principles involved. On the other hand, this case significantly portrays the cardinal principles of our American jury system. However reticent an appellate panel may be about the jury's verdict in a case, it should not, in the guise of correcting errors of law, usurp the constitutionally endowed jury function with a retrofitted verdict of its own. Here the majority does just that. For the foregoing reasons, I

36

respectfully dissent from the majority's reversal of the maintenance and cure jury verdict in favor of

Brown and its rendering a judgment as a matter of law in favor of Parker Drilling.